IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MANUEL LOPES, et al.,**<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>**GEORGE VIEIRA, et al.,**<br><br>　　　　Defendants. | No. CV-F-06-1243 OWW/SMS<br><br>MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT DOWNEY BRAND'S MOTION FOR RECONSIDERATION (Doc. 222), DIRECTING CLERK OF COURT TO FILE AND DOCKET DOWNEY BRAND'S SECOND CORRECTED PRIVILEGE LOG, AND DIRECTING DOWNEY BRAND TO RETAIN PRIVILEGED DOCUMENTS FOR IN CAMERA REVIEW |

Before the Court is Defendant Downey Brand LLP's motion for reconsideration of the "Memorandum Decision and Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel Production of Discovery and For Sanctions (Doc. 104), Denying Defendant Downey Brand's Motion for Protective Order (Doc. 106), and Denying Defendant Downey Brand's Motion for Summary Judgment Against Plaintiff Valley Gold LLC on the Issue of Attorney-Client Privilege (Doc. 96)" filed on February 1, 2010 ("February 1 Memorandum Decision"). Specifically, Downey Brand seeks

reconsideration of the denial of its invocation of the work-product doctrine in response to Plaintiffs' Requests for Documents Nos. 18-21.  The February 1 Memorandum Decision ruled:

> Here, the contested materials were prepared for a securities offering and capital raising effort.  There was then no prospect of or pending litigation.  The documents and materials all related to corporate fund raising to advance the interests of management and investors.  Because the contested materials were not prepared in anticipation of trial or for use in litigation, this aspect of work-product privilege does not apply.  Downey Brand does not describe legal strategy, mental sense impressions, legal research, or evaluation that is denied the opponent in the context of litigation.  The policy objectives of the work-product doctrine are not served by withholding.

Downey Brand requests reconsideration of this ruling on the following grounds:

> 1.  The Order did not address Downey Brand's argument that the documents were prepared in response to an investigation by the California Department of Food and Agriculture, the documents were generated more than a year after the limited offering to investors and nearly a year after Plaintiffs signed agreements to waive milk payments in return for larger equity interests in Valley Gold LLC, and, accordingly, the responsive materials were *not* 'prepared for a securities offering and capital raising efforts' as the Court assumed in its ruling ...; and
>
> 2.  The requested material is not relevant to any claim asserted against Downey Brand, Plaintiffs concede they have the core documents requested aside from Downey Brand's work product, and Plaintiffs have made no showing of a compelling need for Downey Brand's work product.

Although the contested materials are not protected by the attorney-client privilege, whether Downey Brand can withhold under the work-product privilege must be decided because the work-product doctrine applies to the attorney, rather than the client. *See Rhone-Poulenc Rorer, Inc. v. Home Indemn. Co.,* 32 F.3d 851, 866 (3rd Cir.1994).

The work-product doctrine, originally promulgated in *Hickman v. Taylor*, 329 U.S. 495 (1947), recognized that public policy is served by protecting from disclosure to adverse parties, written memoranda and private and personal recollections prepared by attorneys in the course of their legal duties. *Upjohn*, *supra,* 449 U.S. at 397-98. The work-product privilege belongs to both the attorney and the client. *In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 62 (7th Cir.1980). The work-product protection continues even after the litigation is completed. *FTC v. Grolier, Inc.*, 462 U.S. 19, 26 (1983). The work- product privilege was substantially incorporated into F.R.Civ.P 26(b)(3)(A). *Id.* The pertinent portion of that rule provides:

> Ordinarily, a party may not discover documents and tangible things that are *prepared in anticipation of litigation or for trial* by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

(Emphasis added). Such documents may only be ordered produced upon an adverse party's demonstration of "substantial need [for] the materials" and "undue hardship [in obtaining] the substantial equivalent of the materials by other means." *Id.*

3

In *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900 (9th Cir.2004), the Ninth Circuit addressed application of the work-product doctrine to dual purpose documents, joining those Circuits in employing the "because of" standard articulated in the Wright & Miller Federal Practice treatise. *Id.* at 907. The EPA informed Ponderosa Paint Manufacturing, Inc. that it was under investigation for violating federal waste management laws. Ponderosa hired attorney McCreedy to advise and defend it in anticipated civil and criminal litigation with the Government. McCreedy, on behalf of Ponderosa, hired Torf, an environmental consultant, to assist him in preparing a legal defense for Ponderosa and as an environmental consultant on Ponderosa's cleanup efforts at the sites that aroused the EPA's suspicions. Seeking to avoid litigation, Ponderosa submitted numerous documents to the EPA pursuant to an Information Request from the EPA and an Administrative Consent Order between Ponderosa and the EPA. Many of these documents were prepared by Torf. The EPA was satisfied that Ponderosa complied with both the Information Request and the Consent Order. However, a grand jury investigating Ponderosa issued a subpoena to Torf for "any and all records relating in any way to any work" regarding "the disposal of waste material ... from Ponderosa Paint[.]" *Id.* at 907. In adopting the "because of" standard, the Ninth Circuit stated:

> This formulation states that a document should be deemed prepared 'in anticipation of litigation' and thus eligible for work

> product protection under Rule 26(b)(3) if 'in light of the nature of the document and the factual situation in a particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." Charles Alan Wright, Arthur B. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure*, § 2024 (2nd ed. 1994) ....

*Id.* The Ninth Circuit cited *United States v. Adlman*, 134 F.3d 1194 (2nd Cir.1998) as presenting a comprehensive discussion of the "because of" standard:

> The 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]' *Adlman*, 134 F.3d at 1195. Here, there is no question that all of the documents were produced in anticipation of litigation. McCreedy hired Torf because of Ponderosa's impending litigation and Torf conducted his investigations because of that threat. The threat animated every document Torf prepared, including the documents prepared to comply with the Information Request and Consent Order, and to consult regarding the cleanup.

*Id.* at 908. The Ninth Circuit rejected the Government's argument that the withheld documents would have been created in substantially similar form in any event to comply with the Information Request and the Consent Order, and, therefore, were not protected by the work product doctrine:

> The question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation. The circumstances

5

surrounding the document's preparation must also be considered. In the 'because of' Wright & Miller formulation, 'the nature of the document *and* the factual situation of the particular case' are key to a determination of whether work product protection applies. Wright & Miller § 2024 (emphasis added). When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated.

Here, Ponderosa's response to the Information Request and its accession to the Consent Order were done under the direction of an attorney in anticipation of litigation. By cooperating with the EPA, Ponderosa sought to avoid litigation ... Having chosen to pursue a criminal investigation, the government now seeks to capitalize on Ponderosa's earlier cooperation and obtain all of Torf's documents pertaining to the disposal of Ponderosa's waste material. The withheld documents, however, just like the others, were prepared by Torf, at least in part, to help McCreedy advise and defend Ponderosa in anticipated litigation with the government. Thus, the withheld documents fall within the broad category of documents that were prepared for the overall purpose of anticipated litigation.

To the extent that *Adlman* suggests there is no work product protection when, *viewed in isolation of the facts of the case*, a document can be said to have been created for a nonlitigation purpose, we believe the better view is set forth in two Seventh Circuit cases. In the first, *In re Special September 1978 Grand Jury*, 640 F.2d 49 (7th Cir.1980)('*Special September*'), the court extended work product protection to materials that were produced both in anticipation of litigation and for the filing of Board of Education reports required under state law. Work product protection was proper because, by the time the law firm's client received the Board's request for the required reports, the client had already received a subpoena from a federal grand jury. The so-called

'independent' purpose of complying with the Board's request was grounded in the same set of facts that created the anticipation of litigation, and it was the anticipation of litigation that prompted the law firm's work in the first place.

In the later case, *United States v. Frederick*, 182 F.3d 496, 501-02 (7th Cir.1999), the Seventh Circuit held that 'a dual-purpose document - a document prepared for use in preparing tax returns *and* for use in litigation - is not privileged; otherwise, people in or contemplating would be able to invoke, in effect, an accountant's privilege, provided that they used their lawyer to fill out their tax returns.'

*Frederick* does not discuss or distinguish *Special September*, but the two cases can be reconciled by the extent to which the so-called independent purpose is truly separable from the anticipation of litigation.  In *Frederick*, at issue were accountants' worksheets, albeit prepared by a lawyer, in preparation of his clients' tax returns. Although his clients were under investigation (which the court acknowledged was a 'complicating factor'), work product protection was ultimately inappropriate because tax return preparation is a readily separable purpose from litigation preparation and 'using a lawyer in lieu of another form of tax preparer' does nothing to blur that distinction.  *Frederick*, 182 F.3d at 501.  In *Special September*, on the other hand, the materials used to prepare the Board of Elections reports were complied by lawyers and were necessarily created in the first place *because of* impending litigation.

Similarly here, by hiring McCreedy who in turn hired Torf, Ponderosa was not assigning an attorney a task that could just as well have been performed by a non-lawyer.  The company hired McCreedy only after learning that the federal government was investigating if for criminal wrongdoing; a circumstance virtually necessitating legal representation. Torf assisted McCreedy in preparing Ponderosa's defense.  He also acted as an

> environmental consultant on the cleanup. Although in that capacity he could have been retained by Ponderosa directly, this circumstance does not preclude the application of the work-product privilege to documents produced in that capacity, if the documents were *also* produced 'because of' litigation. The challenged documents were prepared under the direction of McCreedy, who was providing legal advice to Ponderosa in anticipation of the impending litigation.
>
> We conclude that the withheld documents, notwithstanding their dual purpose character, fall within the ambit of the work product doctrine. The documents are entitled to work product protection because, taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole.

*Id.* at 908-910.

In contending that the requested documents were prepared "because of the prospect of litigation," Downey Brand asserts that it was first contacted about the milk for equity agreements in June, 2004 when it received a fax from counsel for Valley Gold, Anthony Cary, regarding a California Department of Food and Agriculture audit of Valley Gold. Downey Brand contends that documents responsive to Requests 18-21 in Downey Brand's files were generated in response to an investigation of Valley Gold by the Department of Food and Agriculture and constitute documents that were prepared in anticipation of litigation in the form of administrative proceedings within the ambit of *Torf*, *supra*:

> As in *Torf*, counsel for Valley Gold asked Downey Brand for assistance in responding to the Department's investigation/audit of Valley Gold in conjunction with the milk for

8

equity agreements.

Plaintiffs respond that Downey Brand's work was "transactional," rather than prepared in anticipation of a regulatory investigation:

> The Milk for Equity Contracts clearly *were* a transactional proposal that was [sic] prepared for business reasons. It is true that the Department of Food and Agriculture requested copies of the transactional documents; and it is true that Mr. Colaw wanted the assistance of Downey Brand's attorneys in cleaning up and making the transactional documents as legally binding as possible. But Downey Brand's assignment was not to deal with the Department of Food and Agriculture or to prepare filings, arguments or petitions for the administrative review process. Rather, the task was to complete the underlying *transaction*.

Downey Brand replies that the Court must consider that Plaintiffs are requesting an attorney's files. Downey Brand cites *Hickman v. Taylor*, 329 U.S. 495, 510 (1947):

> Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.

Downey Brand asserts that the decision to retain some materials and discard others is itself a manifestation of an attorney's thought processes protected by the work product doctrine, citing *In re Allen*, 106 F.3d 582, 608 (4th Cir.1997), *cert. denied sub*

9

*nom. McGraw v. Better Government Bureau*, 522 U.S. 1047 (1998):

> Finally, we turn to Document no. 20. It contains pages of selected employment records concerning Donna Willis, which Allen requested that Carolyn Stafford and Charlene Vaughn provide to her. We have held that attorney-client privilege does not protect these records. Yet, just as Allen prepared the interview notes and summaries in anticipation of litigation, she also chose and arranged these records in anticipation of litigation. This choice and arrangement constitutes opinion work product because Allen's selection and compilation of these particular documents reveals her thought processes and theories regarding this litigation.

Downey Brand contends that drafts are "core work product," citing *Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. 44, 47 (N.D.Cal.1971)("Matters that could be classified as attorney work product, such as preliminary drafts of legal documents ... have been classified as privileged"), as are strategic decisions in responding to litigation, citing *Neese v. Pittman*, 202 F.R.D. 344, 350 (D.D.C.2001).

Downey Brand further replies that Plaintiffs' contention that Downey Brand was asked to complete the transaction, not deal with the Department of Food and Agriculture audit, is misplaced. Downey Brand contends that "but for the investigation Downey Brand would not have compiled the material - that alone is enough to make it work product even if it might be considered 'transactional' in another context," citing *Torf*. Downey Brand asserts:

> Assuming the 'transaction/litigation' distinction Plaintiffs attempt to draw was

>recognized, documents prepared to resolve an investigation are not 'transactional.' Downey Brand was asked to assist in meeting the Department's concerns regarding Valley Gold's failure to pay for milk; the material generated in attempting to resolve those concerns is 'litigation' material.

The Court has reviewed all of the documents submitted by Downey Brand in its "Privileged Documents for In Camera Review" received by the Court on December 30, 2009 as responsive to Plaintiff's Requests for Production Nos. 18-21. The documents are covered by the work-product doctrine as articulated by Downey Brand. Downey Brand's legal representation of Valley Gold resulted from the Food and Agriculture's audit of the milk for equity transactions, i.e., because of that audit as well as litigation brought in state court. Counsel for Valley Gold sought Downey Brand's assistance to prepare for in respect to an audit of Valley Gold's business dealings with the prospect of a future enforcement proceeding.

Plaintiffs cite *United States v. Nobles*, 422 U.S. 225, 239 (1975), in contending that an attorney who discloses the work product by sharing it with a client or with another attorney, waives the protection of the work product doctrine. Plaintiffs refer to the second privilege log submitted by Downey Brand which claims work-product protection for a document that was prepared by another attorney who has not claimed work-product protection, or were documents distributed to the management committee and consultants for Valley Gold:

Requests 18 & 20:

```
            Doc. A: Prepared by Anthony Cary;
      Requests 19 & 21:
            Doc. A: Prepared by Anthony Cary;
            Doc. B: Prepared by Anthony Cary;
            Doc. D: Prepared by Anthony Cary;
            Doc. E: Prepared by Anthory Cary;
            Doc. F: Prepared by Scott Collins;
            Doc. G: Sent to Anthony Cary;
            Doc. K: Sent to Anthony Cary;
            Doc. L: Prepared by Anthony Cary;
            Doc. M: Sent to Anthony Cary &
            Management Committee;
            Doc. N: Prepared by Anthony Cary;
            Doc. O: Sent to Anthony Cary;
            Doc. P: Sent to Anthony Cary;
            Doc. Q: Prepared by Anthony Cary;
            sent to Management Committee & others;
            Doc. S: Prepared by Anthony Cary; ent to accounts and
            managers;
            Doc. T: Sent to Anthony Cary;
            Doc. U: Sent to Anthony Cary and accountants;
            Doc. V: Sent to Anthony Cary.
```

At the hearing, Plaintiffs asserted that Anthony Cary was the attorney for CVD and that CVD and Valley Gold did not share a community of common interest because Valley Gold owed a significant amount of money to CVD.  However, the documents

12

submitted with Downey Brand's "Privileged Documents for In Camera Review" as responsive to Plaintiff's Requests for Production Nos. 18-21, indicate that Mr. Cary was acting on behalf of Valley Gold, in several instances identifying himself as counsel for Valley Gold.  There is no indication that Mr. Cary was acting as counsel for CVD at that time.[1]

In *Nobles*, the Supreme Court held:

> The privilege derived from the work-product doctrine is not absolute.  Like other qualified privileges, it may be waived.  Here respondents sought to adduce the testimony of the investigator and contrast his recollection of contested statements with that of prosecution witnesses.  Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony.  Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.

422 U.S. at 239.  Here, Downey Brand asserts, Plaintiffs do not argue that Downey Brand has injected any issue regarding the administrative investigation into this action or that Downey Brand's mental impressions, strategies or settlement postures are directly at issue.  Rather, Plaintiffs argue that the work-

---

[1] Although Anthony Cary was named as a defendant in this action, on October 4, 2007, Plaintiffs filed a Notice of Voluntary Dismissal and Anthony Cary was dismissed from this action by Order filed on October 10, 2007.  CVD is not a party to this action.  Plaintiffs' derivative claim on behalf of CVD was dismissed with prejudice in the Memorandum Decision and Order filed on March 13, 2008 (Doc. 67).

13

product privilege was waived when material was disclosed to third parties.

Downey Brand cites *U.S. E.E.O.C. v. ABM Industies Inc.*, 261 F.R.D. 503, 512 (E.D.Cal.2009):

> Disclosure to a third party does not automatically waive the protection of the work product doctrine ... Because one of the primary functions of the work-product doctrine is to prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigation, analysis, and strategies for developing and presenting the client's case, any analysis of work product waiver issues must focus on whether the subject disclosures increased the likelihood that a current or potential opponent in litigation would gain access to the disputed documents.

Asserting that the "litigation opponent" when the disputed material was compiled was the Department of Food and Agriculture, Downey Brand contends that Plaintiffs do not suggest that Downey Brand did anything that increased the likelihood the Department of Food and Agriculture would gain access to the material:

> Plaintiffs do not contend in the Opposition or elsewhere that the documents generated during the investigation were signed, became effective or were made public.  See also SAC at 34:21-25, 36:27-37:7 & 40:24-26, Doc. 71 (no claim against Downey Brand for damages related to the 2003 agreements or the Investigation).  They present no evidence of waiver through conduct that, for example, they requested Cary's files compiled in response to the Investigation and he produced them without objection.  In the absence of an explicit waiver, a disclosure by Cary or Downey Brand to an attorney representing a common client does not waive the work product doctrine.

Downey Brand cites *United States v. American Tel. and Tel. Co.*,

```
 1  642 F.2d 1285, 1299-1300 (D.C.Cir.1980):

 2             We do not endorse a reading of the *GAF Corp.*
               standard so broad as to allow confidential
 3             disclosure to any person without waiver of
               the work product privilege.  The existence of
 4             common interests between transferor and
               transferee is relevant to deciding whether
 5             the disclosure is consistent with the nature
               of the work product privilege.  But 'common
 6             interests' should not be construed as
               narrowly limited to co-parties.  So long as
 7             the transferor and transferee anticipate
               litigation against a common adversary on the
 8             same issue or issues, they have strong common
               interests in sharing the fruit of trial
 9             preparation efforts.  Moreover, with common
               interests on a particular issue against a
10             common adversary, the transferee is not at
               all likely to disclose the work product
11             material to the adversary.  When the transfer
               is to a party with such common interests is
12             conducted under a guarantee of
               confidentiality, the case against waiver is
13             even stronger.
```

14  Disclosure of work product to a client or the client's counsel

15  does not waive the work product doctrine.  *See, e.g., BP Alaska*

16  *Exploration, Inc. v. Superior Court*, 199 Cal.App.3d 1240, 1261

17  (1988):

```
18             We conclude from the cited cases that the
               attorney's absolute work product protection
19             continues as to the contents of a writing
               delivered to a client in confidence.  The
20             protection precludes third parties not
               representing the client from discovery of the
21             writing.  The fact that the client does not
               object to disclosure of the contents of the
22             writing does not lessen the attorney's need
               for privacy.  The recognition of an
23             attorney's right to assert a work product
               protection in the contents of a writing after
24             it is delivered to the client strengthens the
               attorney-client relationship by enabling the
25             attorney to evaluate his client's case and to
               communicate his opinions to the client
26             without fear that his opinions and theories
```

>             will thereafter be exposed to the opposing
>             party or to the public in general for
>             criticism or ridicule.

Here, the documents submitted by Downey Brand in its "Privileged Documents for In Camera Review" as responsive to Plaintiff's Requests for Production Nos. 18-21 establish that the exchanges of letters, emails and documents between Downey Brand, Anthony Cary, various accountants, and members of Valley Gold's management committee were for a common purpose in responding to the Department of Food and Agriculture's audit and investigation and a possible enforcement proceeding.  Consequently, that some of the described documents were not authored by Downey Brand does not constitute a waiver of the work-product doctrine.

The documents responsive to Requests 18-21 are not relevant to any claims Plaintiffs make against Downey Brand because Plaintiffs do not assert a claim against Downey Brand based on these documents, Plaintiff have testified that Downey Brand attorneys were not present when the agreements were discussed, and it is undisputed that the agreements were drafted by attorney Curtis Colaw.  At the hearing, Plaintiffs asserted that Anthony Cary prepared the initial milk for equity contracts in 2003 without any input from Downey Brand and that Plaintiffs have at least one version of the milk for equity contract the accuracy of which Plaintiffs question because it looks like there was space left to put in the effective date at later time.  Plaintiffs refer to Downey Brand's Second Corrected Privilege Log, Request No. 19, Doc. B, which describes a "Fax from Cary to Koewler re

16

1  Valley Gold owner agreements (Jun. 30, 2003) with attached
2  draft."  Noting that the date of the fax, June 30, 2003, predated
3  the Department of Food and Agriculture investigation, Plaintiffs
4  asserted at the hearing that this document is relevant because it
5  might substantiate their contention that the milk for equity
6  contract in Plaintiffs' possession is not an accurate copy.
7  However, the reference to June 30, 2003 in the Second Corrected
8  Privilege log is a typographical error.  The document submitted
9  by Downey Brand in its Privileged Documents for In Camera Review
10 is actually dated June 30, 2004.  As Downey Brand contends:

> The requested material is not relevant to any claim asserted against Downey Brand nor the alleged inducement of Plaintiffs to enter into the milk for equity agreements asserted against other defendants.  A party may not obtain material protected by the work product doctrine absent a substantial need or undue hardship.

Plaintiffs respond:

> To prepare their case for trial, plaintiffs sought discovery information about the Milk for Equity Contracts.  Our understanding is that the initial Milk for Equity Contracts were prepared by an attorney named Curtis Colaw.  On December 9, 2004, Mr. Colaw reported to the Department of Food and Agriculture that Downey Brand had been hired and was working to 'produce the proper documentation, consistent with securities law requirements' to formalize the Milk for Equity Contracts.  That collaboration led to a final Milk for Equity Contract that was presented to the Valley Gold investors in [sic] April 1, 2005.  An insufficient number of investors signed the agreement and it was thus never presented to the Department of Food and Agriculture.
>
> Valley Gold's milk handler's license was

> suspended a short while later, and by July of 2005, the company had ceased operations and entered into a wind-down mode.

However, as Downey Brand replies:

> Assuming these facts, if established, would show materials compiled in 2003 related to Plaintiffs' decision to forego payment for mile were relevant, they have no relevance to the requested material compiled in response to the investigation in 2004. Any potential connection between these events is meaningless, however, for, in contrast to this argument, the facts demonstrate Plaintiffs have admitted there is no connection between Downey Brand and their agreements in 2003.

Downey Brand's position is well-taken. The requested documents are not relevant to any claim against Downey Brand.

## CONCLUSION

For the reasons stated:

1. Downey Brand's motion for reconsideration of the February 1, 2010 Memorandum Decision is GRANTED;

2. Downey Brand's motion for protective order precluding its response to Plaintiffs' Requests for Documents Nos. 18-21 pursuant to the work-product doctrine is GRANTED;

3. The Clerk of the Court is directed to file and docket Downey Brand's Second Corrected Privilege Log.

4. Downey Brand shall retain the two binders and their entire contents, captioned Privileged Documents for In Camera Review provided to the Court on December 29, 2009, until the final resolution of this case, including any appellate review.

///

1  IT IS SO ORDERED.

2  **Dated:**   **June 22, 2010**                              /s/ Oliver W. Wanger
                                                              UNITED STATES DISTRICT JUDGE