1

2

3

4

5

6

7                IN THE UNITED STATES DISTRICT COURT FOR THE

8                     EASTERN DISTRICT OF CALIFORNIA

9

10   MANUEL LOPES AND MARIANA        )        No. CV-F-06-1243 OWW/SMS
     LOPES, et al.,                  )
11                                   )        MEMORANDUM DECISION GRANTING
                                     )        DEFENDANTS GENSKE MULDER LLP
12                                   )        AND DOWNEY BRAND LLP'S
                     Plaintiffs,     )        MOTIONS FOR SUMMARY JUDGMENT
13                                   )        AGAINST PLAINTIFF ANTONIO
              vs.                    )        ESTEVAM (Docs. 113 & 128)
14                                   )
                                     )
15   GEORGE VIEIRA, et al.,          )
                                     )
16                                   )
                     Defendants.     )
17                                   )
     _____ )
18

19        Defendants Genske Mulder & Company ("Genske Mulder") and

20   Downey Brand LLP ("Downey Brand") respectively move for summary

21   judgment or summary adjudication against Plaintiff Antonio

22   Estevam on the Fourth through Eighth Causes of Action in the

23   Second Amended Complaint ("SAC").

24        Genske Mulder seeks summary judgment or adjudication:

25             A.   Fourth Cause of Action for securities
                    fraud in violation of the Securities Exchange
                    Act of 1934 on the ground that Plaintiff
26                  Estevam did not purchase Valley Gold LLC's

                                  1

securities or any other securities;

B.  Fifth Cause of Action for violation of California securities law on the ground that Plaintiff Estevam did not purchase Valley Gold LLC's securities or any other securities;

C.  Sixth Cause of Action for negligence on the grounds that Plaintiff Estevam was not a client of Genske Mulder and Genske Mulder did not owe him a duty of care;

D.  Seventh Cause of Action for intentional misrepresentation on the grounds that Plaintiff Estevam did not receive or rely on, any material misrepresentation or omission made by Genske Mulder;

E.  Eighth Cause of Action for negligent misrepresentation on the grounds the Plaintiff Estevam did not receive or rely on, any material misrepresentation made by Genske Mulder.

Downey Brand seeks summary judgment or adjudication as to the Fourth and Fifth Causes of Action on the grounds that Plaintiff Estevam did not purchase a security; on the Fourth through Eighth Causes of Action on the grounds that Plaintiff Estevam cannot establish that Downey Brand made an affirmative misrepresentation and owed Plaintiff no duty to disclose; and on the Fourth through Eighth Causes of Action on the grounds that Plaintiff Estevam cannot establish reliance or causation.

A.   <u>GOVERNING STANDARDS</u>.

Summary judgment is proper when it is shown that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  A fact is "material" if it is relevant to an

2

element of a claim or a defense, the existence of which may affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Materiality is determined by the substantive law governing a claim or a defense. *Id.* The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party. *Id.*

The initial burden in a motion for summary judgment is on the moving party. The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to defeat summary judgment. *T.W. Elec.*, 809 F.2d at 630. The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial." *Id.* The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint." *Id.* The question to be resolved is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1995). This requires more than the

"mere existence of a scintilla of evidence in support of the plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff." *Id.* The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment." *Id.* In *Scott v. Harris*, ___ U.S. ___, 127 S.Ct. 1769, 1776 (2007), the Supreme Court held:

> When opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

As explained in *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099 (9th Cir.2000):

> The vocabulary used for discussing summary judgments is somewhat abstract. Because either a plaintiff or a defendant can move for summary judgment, we customarily refer to the moving and nonmoving party rather than to plaintiff and defendant. Further, because either plaintiff or defendant can have the ultimate burden of persuasion at trial, we refer to the party with and without the ultimate burden of persuasion at trial rather than to plaintiff and defendant. Finally, we distinguish among the initial burden of production and two kinds of ultimate burdens of persuasion: The initial burden of production refers to the burden of producing evidence, or showing the absence of evidence, on the motion for summary judgment; the ultimate burden of persuasion can refer either to the burden of persuasion on the motion or to the burden of persuasion at trial.
>
> A moving party without the ultimate burden of persuasion at trial - usually, but not always, a defendant - has both the initial burden of production and the ultimate burden

4

of persuasion on a motion for summary judgment ... In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial ... In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact ....

If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial ... In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything ... If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense ... If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment ... But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion.

210 F.3d at 1102-1103.

B. **STATEMENT OF UNDISPUTED FACTS**.

    1.   **Genske Mulder**

        a.   **Fourth Cause of Action for Federal Securities Fraud**.

    GMUDF 1.  Plaintiff Estevam did not purchase Valley Gold securities.

        *Plaintiff's Response*: Undisputed.

    GMUDF 2.  Plaintiff Estevam did not receive or read the

5

Valley Gold Offering Memorandum.

*Plaintiff's Response*: Undisputed.

b. <u>Fifth Cause of Action for State Securities Fraud</u>.

GMUDF 3.  Plaintiff Estevam did not purchase Valley Gold securities.

*Plaintiff's Response*: Undisputed.

GMUDF 4.  Plaintiff Estevam did not receive or read the Valley Gold Offering Memorandum.

*Plaintiff's Response*: Undisputed.

c. <u>Sixth Cause of Action for Negligence</u>.

GMUDF 5.  Plaintiff Estevam did not retain Genske Mulder as his accountant.

*Plaintiff's Response*: Undisputed.

GMUDF 6.  Plaintiff Estevam did not know any of the Genske Mulder personnel in the Central Valley Dairy or Valley Gold engagements.

*Plaintiff's Response*: Undisputed.

d. <u>Seventh Cause of Action for Intentional Misrepresentation</u>.

GMUDF 7.  Plaintiff Estevam did not receive or read the Valley Gold Offering Memorandum.

*Plaintiff's Response*: Undisputed.

GMUDF 8.  Plaintiff Estevam did not receive any representations from Genske Mulder.

*Plaintiff's Response*: Undisputed.

6

GMUDF 9.  Plaintiff Estevam did not receive any documents from Genske Mulder.

*Plaintiff's Response*: Undisputed.

e.  <u>Eighth Cause of Action for Negligent Misrepresentation</u>.

GMUDF 10.  Plaintiff Estevam did not receive any representations from Genske Mulder.

*Plaintiff's Response*: Undisputed.

GMUDF 11. Plaintiff Estevam did not receive any documents from Genske Mulder.

*Plaintiff's Response*: Undisputed.

GMUDF 12.  Plaintiff Estevam is not able to recall any statement made by Genske Mulder personnel other than a vague statement that "we [CVD] were doing well and were making money."

*Plaintiff's Response*: Undisputed.

GMUDF 13: When Plaintiff Estevam was not getting paid for his milk, he called Tim Brasil, the President of CVD, who told him that CVD had not been paid.

*Plaintiff's Response*: Undisputed.

2.  <u>Plaintiff Estevam's Statement of Additional Undisputed Facts</u>.

PEUDF A.  Plaintiff Estevam was a member of CVD until June or July, 2005.

PEUDF B.  In 2004, CVD began paying late for milk that Plaintiff Estevam delivered to Valley Gold.

PEUDF C.  Plaintiff Estevam continued to ship milk to Valley

7

Gold because he believed that the Valley Gold cheese plant was going to be successful.

PEUDF D.  Plaintiff Estevam's friends at the other dairies were also having financial problems, but they continued to ship their milk to Valley Gold.  Friends like Raymond Lopes and Manuel Lopes said that they still believed the cheese plant was going to be successful.  Because they believed in the plant and continued to ship their milk to Valley Gold, Plaintiff Estevam did too.

PEUDF E.  When Raymond Lopes and Manuel Lopes quit CVD and stopped shipping their milk to Valley Gold, Plaintiff Estevam quit too.

2.  <u>Downey Brand</u>.

DBUDF 1.  Downey Brand has never represented Central Valley Dairymen, Inc.

*Plaintiff's Response*: Disputed.  On February 28, 2003, Valley Dairymen LLC was formed.  Downey Brand represented CVD in creating that entity, which was a subsidiary of CVD.  The Declaration of Plaintiffs' counsel Douglas Applegate, avers that an invoice, dated March 13, 2003, attached as Exhibit X, demonstrates that Downey Brand was hired by CVD's longstanding counsel, Augustine & Colaw, to form an entity called Valley Dairymen LLC and that Mr. Applegate's "research indicates that Valley Dairymen, LLC was formed as a wholly owned subsidiary of Central Valley Dairymen."

*Downey Brand's Reply*:  In contending that Downey Brand represented CVD in creating Valley Dairymen, Plaintiffs

8

rely on an "unauthenticated, inadmissible" Downey Brand bill sent to Valley Dairymen on March 13, 2003 in care of the law firm, Colaw & Augustine.  Downey Brand asserts that Mr. Applegate's averment Colaw & Augustine was CVD's longstanding counsel means that CVD paid for these services is constructed out of thin air. Downey Brand argues that Mr. Applegate's assertion that Valley Dairymen was a wholly owned subsidiary of CVD is speculative hearsay.  Even if Mr. Applegate's speculation is accepted as fact, Downey Brand asserts that its client would be the entity to be formed, Valley Dairymen, LLC, not CVD.  Downey Brand cites California Practice Guide: Professional Responsibility, §§ 3:107.2 - 107.4, stating that "out-of-state authorities have reasoned that an attorney-client relationship exists between the attorney and the corporation (not with the individuals) 'retroactively' from the time the attorney is retained and the corporation is actually formed (by filing incorporation papers," § 3:107.2, because "[i]f the person who retains the attorney for the purpose of organizing the corporation is considered the 'client,' any subsequent representation of the corporation by that lawyer would automatically amount to dual representation, resulting in the lawyer's possible disqualification." § 3:107.3. Downey Brand also cites *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.,* 69 Cal.App.4th 1399, 1404 (1999), involving an appeal of the trial court's order disqualifying plaintiff's attorney based on the attorney's having represented plaintiff in connection with a stock offering: "[P]ayment of attorney fees

alone does not determine an attorney-client relationship; it is merely a factor."

On November 4, 2004, CVD paid a $15,000 retainer to Downey Brand for Downey Brand's work to convert Valley Gold debt into equity.

*Downey Brand's Reply*: Plaintiffs' evidence does not create an issue of fact that Downey Brand ever represented CVD.  Downey Brand submits a letter dated November 12, 2004 from Jeffrey Koewler of Downey Brand to Tony Cary regarding "retainer for Valley Gold, LLC:"

> Enclosed please find check number 013378, which you delivered to Downey Brand, in the amount of $15,000.  The check is made out to Downey Brand on a Central Valley Dairymen bank account.  As Chris Delfino stated in his voicemail to you on November 12, 2004, we are returning the check to you because our client is Valley Gold, and the matter which you have asked us to assist you involves Valley Gold and Central Valley Dairymen.  To avoid any confusion as to who we represent, we cannot accept a check from Central Valley Dairymen. If Valley Gold would like to retain Downey Brand, please have Valley Gold provide us with the retainer check.

Downey Brand notes that the accounting report upon which Plaintiffs rely in asserting that Downey Brand was paid $15,000 by CVD for work in creating CVD has the handwritten notation that the check was not cashed.

*Court's Ruling*: It is UNDISPUTED that Downey Brand never represented CVD.  Plaintiffs' evidence does not suffice to

create a genuine issue of material fact.[1]

DBUDF 2.   Plaintiff Estevam did not invest in Valley Gold.

*Plaintiff's Response*: Undisputed as phrased.  Over several years, CVD withheld sums from Plaintiff Estevam's milk checks, which were placed into a trust to be used for acquiring a cheese plant.  CVD ultimately used that trust money to acquire an ownership interest in Valley Gold in CVD's name.  Plaintiff Estevam had a beneficial interest in CVD's ownership.

*Court Ruling*: Plaintiff provides no evidentiary support for this response.  The fact is UNDISPUTED.

DBUDF 3.   Plaintiff Estevam did not read any of the documents associated with the Valley Gold offering to investors or documents prepared by Valley Gold's accountants.

*Plaintiff's Response*: Undisputed.

DBUDF 4.   Plaintiff Estevam has never retained Downey Brand to represent him nor has he ever spoken to, or heard anything said by, a Downey Brand attorney.

*Plaintiff's Response*: Undisputed.

4.   <u>Plaintiff's Statement of Undisputed Additional Facts</u>.

---

[1]In Downey Brand's statement of undisputed facts in support of its amended motion for summary judgment as to Joseph Lopes as Trustee of the Raymond Lopes Family Trust, Downey Brand asserted the same fact.  (Doc. 277-2, DBUDF 1).  Plaintiff Joseph Lopes as Trustee of the Raymond Lopes Family Trust responded "undisputed" in his response to Downey Brand's statement of undisputed facts.  (Doc. 282).

1    PEUDF A.   Plaintiff Estevam was a member of CVD until June

2  or July, 2005.

3    PEUDF B.   In 2004, CVD began paying late for milk that

4  Plaintiff Estevam delivered to Valley Gold.

5    PEUDF C.   Plaintiff Estevam continued to ship milk to Valley

6  Gold because he believed that the Valley Gold cheese plant was

7  going to be successful.

8    PEUDF D.   Plaintiff Estevam's friends at the other dairies

9  were also having financial problems, but they continued to ship

10  their milk to Valley Gold.   Friends like Raymond Lopes and Manuel

11  Lopes said that they still believed the cheese plant was going to

12  be successful.   Because they believed in the plant and continued

13  to ship their milk to Valley Gold, Plaintiff Estevam did too.

14    PEUDF E.   When Raymond Lopes and Manuel Lopes quit CVD and

15  stopped shipping their milk to Valley Gold, Plaintiff Estevam

16  quit too.

17    C.   Fourth Cause of Action.

18    The Fourth Cause of Action alleges securities fraud in

19  violation of the Securities Exchange Act of 1934.[2]

20    Defendants move for summary judgment on the ground that

21  Plaintiff Estevam's admission that he did not purchase any Valley

22  Gold security precludes relief as to him on this cause of action.

23  *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 735-736

24  _____

25    [2]The caption of the Fourth Cause of Action is "Securities
   Fraud: Securities Act of 1934."   However, the allegations of the
26  Fourth Cause of Action make clear that the cause of action is for
   violation of the Securities Exchange Act of 1934 and Rule 10b-5.

12

(1975).

Plaintiff Estevam conceded at the hearing that Defendants are entitled to summary adjudication in their favor as to the Fourth Cause of Action.

Defendants' motion for summary judgment against Plaintiff Estevam as to the Fourth Cause of Action is GRANTED.

D.   Fifth Cause of Action.

The Fifth Cause of Action alleges a claim for violation of California Corporations Code § 25400(d).

Defendants move for summary judgment as to this claim in the Fifth Cause of Action on the ground that Plaintiff Estevam's admission that he did not purchase any Valley Gold security precludes relief as to him on this state securities cause of action.   *See Kamen v. Lindly*, 94 Cal.App.4th 197, 206 (2001).

Plaintiffs does not respond to this ground for summary judgment against Plaintiff Estevam.   Because of Plaintiffs' concession that Defendants are entitled to summary judgment as to the federal securities Fourth Cause of Action, Defendants' motions for summary judgment against Plaintiff Estevam is GRANTED as to the Fifth Cause of Action.

E.   Sixth Cause of Action.

The Sixth Cause of Action is for negligence. "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) the breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."   *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333,

13

1339 (1998).  "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide."  *Vasquez v. Residential Investments, Inc.*, 118 Cal.App.4th 269, 278 (2004).

      1.  <u>GENSKE MULDER</u>.

Genske Mulder moves for summary judgment on the ground that Plaintiff Estevam cannot establish that Genske Mulder owed Plaintiff Estevam a duty of care.

In *Bily v. Arthur Young & Co.*, 3 Cal.4th 370 (1992), the California Supreme Court held that an accounting firm can be held liable for general professional negligence in conducting an audit of financial statements only to the person or entity contracting for the accountant's services, and, in that case, the accounting firm's sole client was the company.[3]  The Supreme Court stated:

> [W]e hold that an auditor's liability for general negligence in the conduct of an audit of its client financial statements is confined to the client, i.e., the person who contracts for or engages the audit services. Other persons may not recover on a pure negligence theory.

3 Cal.4th at 406.  The Supreme Court noted, however:

> In theory, there is an additional class of persons who may be the practical and legal equivalent of 'clients.'  It is possible the audit engagement contract might expressly identify a particular third party or parties so as to make them express third party beneficiaries of the contract.  Third party

_____

[3]The California Supreme Court further held that an accountant may be held liable for negligent misrepresentation to third parties who are known to the accountant and for whose benefit the audit report was rendered.

14

> beneficiaries may under appropriate
> circumstances possess the rights of parties
> to the contract ... This case presents no
> third party beneficiary issue.  Arthur Young
> was engaged by the company to provide audit
> reporting to the company.  No third party is
> identified in the engagement contract.
> Therefore, we have no occasion to decide
> whether and under what circumstances express
> third party beneficiaries of audit engagement
> contracts may recover as 'clients' under our
> holding.

*Id.* at 406 n.16.

Because it is undisputed that Plaintiff Estevam never retained Genske Mulder as his accountant or obtained professional services from Genske Mulder and, Genske Mulder asserts, there is no evidence that Genske Mulder is legally responsible for CVD's failure to pay Plaintiff Estevam for his milk, Genske Mulder contends that it is entitled to summary judgment as to the Sixth Cause of Action.

Plaintiff Estevam responds that the fact he was not a client of Genske Mulder does not compel summary judgment in favor of Genske Mulder: "The law is not, and never has been, that rigid."

Plaintiff Estevam cites no case authority for this proposition.  However, in Plaintiffs' opposition to the motion to dismiss the First Amended Complaint, Plaintiff Estevam cited *Murphy v. BDO Seidman, LLP,* 113 Cal.App.4th 687 (2003), as authority that liability for negligence does not depend on a contractual or professional relationship.

In *Murphy*, scores of stockholders filed an amended complaint alleging negligent and intentional misrepresentation against two

15

accounting firms for issuing financial statements overstating the value of two corporations in the process of merging upon which the stockholders relied in approving the merger, buying stock in one or both of the corporations.  Following the merger, the corporation went bankrupt causing the stockholders to lose their investments.  The trial court sustained the accounting firms' demurrers without leave to amend.  On appeal, the accounting firms argued that their liability for the inaccuracies in their financial statements was only to their clients, the two corporations, and therefore no duty of care was owed to third parties.  The Court of Appeal disagreed:

> *Bily* imposes on respondents a duty of care to more than just their clients.  Respondents owed a duty to anyone whom they (1) should have reasonably foreseen would rely on their intentional misrepresentations, or (2) knew with substantial certainty would rely on their negligent misrepresentations.  (*Bily, supra*, 3 Cal.4th at pp.413-415.)  The complaint alleges respondents knew the proposed merger of WIN and Struthers would induce investors in Struthers to rely on financial statements about WIN in anticipation of the two companies becoming one.  In addition, the complaint alleges respondents knew Struthers investors would rely on WIN's financial statements in deciding whether to approve the merger itself.  The complaint therefore alleges a duty from respondents to Struthers' shareholders, making respondents liable to those shareholders for their misrepresentation.

Plaintiff Estevam also cited *Cabanas v. Gloodt Associates,* 942 F.Supp. 1295, 1308-1309 (E.D.Cal.1996), *aff'd,* 141 F.3d 1174 (9th Cir.1998), in their opposition to the motion to dismiss the

First Amended Complaint.  At issue in *Cabanas* was whether an appraiser, when conducting an appraisal of a going concern, owes a duty to the manager or owner of the property not to negligently harm its interests.  The District Court noted that the "general rule against recovery for negligent interference with contract or prospective economic advantage is subject to one exception: where there is a 'special relationship' between the parties."  *Id*. at 1308.  The District Court stated:

> Whether such a special relationship exists is determined by examining six factors:
>
> > (1) the extent to which the transaction was intended to affect the plaintiff;
> >
> > (2) the foreseeability of harm to the plaintiff;
> >
> > (3) the degree of certainty that the plaintiff suffered injury;
> >
> > (4) the closeness of the connection between the defendant's conduct and the injury suffered;
> >
> > (5) the moral blame attached to the defendant's conduct; and
> >
> > (6) the policy of preventing future harm.

*Id.*

Here, there is no evidence that Plaintiff Estevam relied on any representations made by Genske Mulder; rather, the evidence is that Plaintiff Estevam relied on the opinions of his friends, such as Plaintiffs Raymond Lopes and Manuel Lopes, that the cheese plant was going to be successful, in continuing to ship

milk to CVD for Valley Gold.  There is no evidence as to the basis of his friends' opinions or what they told Plaintiff Estevam.  Nor is there evidence the accountants had notice or foresaw that Valley Gold investors would provide opinions to their friends who were also milk suppliers to CVD.

Plaintiff Estevam cites *Lovejoy v. AT&T Corp.*, 92 Cal.App.4th 85 (2001), which addresses the concepts of indirect misrepresentation and indirect reliance:

> It is true that California courts recognize the principle of indirect misrepresentation, under which a knowingly false statement is no less actionable because it was made to an intermediary who then *conveyed it* to the party ultimately injured ... However, this doctrine requires that the defendant intend or has reason to expect that it will be '*repeated and acted upon by the plaintiff.*' ...
>
> ... Under the principle of indirect reliance, a fraudulent misrepresentation is actionable if it was communicated to an *agent* of the plaintiff and was acted upon by the agent to the plaintiff's damage.  A classic example of indirect reliance would be a drug manufacturer's misrepresentation to physicians about the safety of its drug.  A patient injured by the drug is permitted to sue the manufacturer for fraud without proof that his doctor repeated the falsehood to him, under the theory that the doctor was acting as the plaintiff's agent.

92 Cal.App.4th at 94.  Plaintiff Estevam argues that Genske Mulder may be liable under the theory of indirect misrepresentation and indirect reliance.  However, Plaintiff Estevam presents no evidence that Genske Mulder intended or had reason to expect that any misrepresentation concerning Valley

18

Gold would be repeated and acted upon by a person who did not invest in Valley Gold and presents no evidence that Plaintiff Estevam's friends such as Manuel Lopes was acting as Plaintiff Estevam's agent.

Plaintiff Estevam asserts that Genske Mulder is subject to negligence liability under the derivative claim asserted on behalf of Valley Gold.

Plaintiff Estevam concedes that he did not purchase a Valley Gold security, i.e., that he was not a shareholder of Valley Gold.  A derivative action must be brought by the shareholders on behalf of the corporation.  *See* California Corporations Code § 800(b); Rule 23.1, Federal Rules of Civil Procedure.  Therefore, he cannot base his claim of negligence against Genske Mulder on derivative liability.

Plaintiff Estevam further argues that the "whole range of facts is much more damaging" than Genske Mulder will admit:

> As the cheese plant faltered and lost money in the first six months, Paul Anema from Genske Mulder prepared a chart for a planned meeting showing that Valley Gold was selling its cheese at about half the established market rate.  Mr. Vieira objected, and Mr. Anema complied, and he hid the chart from the light of day.  Genske Mulder every month reconciled CVDs [sic] accounts and processed its bills, and saw every month the bills for Mr. Vieira's criminal attorneys.  Those bills leave no doubt that Mr. Vieira was actively negotiating a plea deal, was planning on going to prison, and was guilty of securities fraud *in the operation of a cheese plant* in Manteca, California.  (See Plaintiffs' Exhibits N through V.).

None of these representations were made by Genske Mulder to

Plaintiff Estevam.   The evidence is undisputed that Plaintiff Estevam never received or read the Valley Gold Offering Memorandum, that he did not receive any documents from Genske Mulder and did not receive any representations from Genske Mulder.

Genske Mulder's motion for summary judgment against Plaintiff Estevam as to the Sixth Cause of Action is GRANTED.

        2.  <u>Downey Brand</u>.

Downey Brand moves for summary judgment as to the Sixth Cause of Action on the grounds that Plaintiff Estevam cannot establish an affirmative misrepresentation made by Downey Brand to Plaintiff Estevam and that Downey Brand owed no duty to disclose to Plaintiff Estevam.

Downey Brand asserts that Plaintiff Estevam cannot point to an affirmative misstatement made by Downey Brand to Plaintiff Estevam.   Downey Brand quotes *Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1225 (10th Cir.1996), a case addressing a primary liability claim under § 10(b): "Reliance only on representations made by others cannot itself form the basis of liability."   "[F]or a cause of action for negligent misrepresentation, clearly a representation is an essential element."

Plaintiff Estevam cites *Lovejoy v. AT&T Corp.*, *supra,* 92 Cal.App.4th at 94, addressing the concepts of indirect misrepresentation and indirect reliance.   Plaintiff Estevam argues that Downey Brand may be liable under the theory of

1  indirect misrepresentation and indirect reliance.  However,

2  Plaintiff Estevam presents no evidence that Downey Brand intended

3  or had reason to expect that any misrepresentation concerning

4  Valley Gold would be repeated and acted upon by a person who did

5  not invest in Valley Gold and presents no evidence that Plaintiff

6  Estevam's friends such as Manuel Lopes were acting as Plaintiff

7  Estevam's agent.

8      Downey Brand also moves for summary judgment on the ground

9  that it did not have a duty to disclose running to Plaintiff

10 Estevam.

11     As explained in *Fox v. Pollack*, 181 Cal.App.3d 954, 960

12 (1986):

13          With certain exceptions, an attorney has no
           obligation to a nonclient for the
14         consequences of professional negligence –
           this is, the attorney is not burdened with
15         any duty toward nonclients merely because of
           his or her status as an attorney.  The
16         existence of such a duty is a question of law
           dependent upon 'a judicial weighing of the
17         policy considerations for and against the
           imposition of liability under the
18         circumstances ...' ... The imposition of a
           duty of professional care toward nonclients
19         has generally been confined to those
           situations wherein the nonclient was an
20         intended beneficiary of that attorney's
           services, or where it was reasonably
21         foreseeable that negligent service or advice
           to or on behalf of the client would cause
22         harm to others. '[T]he determination whether
           in a specific case the [attorney] will be
23         held liable to a third person not in privity
           is a matter of policy and involves the
24         balancing of various factors, among which are
           the extent to which the transaction was
25         intended to affect the plaintiff, the
           foreseeability of the harm to him, the degree
26         of certainty that the plaintiff suffered

                                21

> injury, the closeness of the connection
> between the [attorney's] conduct and the
> injury, and the policy of preventing future
> harm ...'....

Downey Brand notes that Plaintiff Estevam concedes he was not a client of Downey Brand, but pleads that Downey Brand represented CVD and Valley Gold.  Downey Brand cites *La Jolla Cove Motel and Hotel Apartments, Inc. v. Superior Court*, 121 Cal.App.4th 773, 784 (2004):

> In representing a corporation, an attorney's
> client is the *corporate entity,* not
> individual shareholders or directors, and the
> individual shareholders or directors cannot
> presume that corporate counsel is protecting
> their interests.

Rule 3-600(E), State Bar Rules of Professional Conduct, provides:

> A member representing an organization may
> also represent any of its ... members,
> shareholders, or other constituents, subject
> to the provisions of rule 3-310.  If the
> organization's consent to the dual
> representation is required by rule 3-310, the
> consent shall be given by an appropriate
> constituent of the organization other than
> the individual or constituent who is to be
> represented, or by the shareholder(s) or
> organization members.

Downey Brand asserts that Plaintiff Estevam concedes there was no agreement by either CVD or Valley Gold that Downey Brand represent Plaintiff Estevam.

Downey Brand asserts that it did not represent CVD. Plaintiff responds that Downey Brand did not "exit the scene" after the Offering:

> Rather, on November 4, 2005, Downey Brand
> accepted a $15,000 retainer *paid by CVD* which
> was then owed $30 million in unpaid milk, and

22

> it then used that retainer to prepare an
> agreement to try to cram down the conversions
> of milk debt for equity, despite the lack of
> necessary consensus or corporate formalities.

However, the evidence is that Downey Brand was not paid by

CVD and that the $15,000 check was returned by Downey Brand to

CVD uncashed because Downey Brand's client was Valley Gold, not

CVD.  Plaintiff Estevam presents no contrary evidence.

Downey Brand further argues that, even if it did represent

CVD, a cooperative corporation is distinct from its members,

citing *Schuler v. Meschke*, 435 N.W.2d 156, 162 (Minn.App.1989):

> An incorporated cooperative is a legal
> entity, separate and apart from its members.
> 18 Am.Jur.2d *Cooperative Associations*, § 3,
> page 263.  North Dakota law governing
> cooperatives recognizes a distinction between
> a cooperative and its members ... Minnesota
> has similar laws.

Although Downey Brand represented Valley Gold, no duty to

Plaintiff Estevam arises from this fact, Downey Brand contends,

because Plaintiff Estevam did not purchase any Valley Gold

security.

Downey Brand's motion for summary judgment against Plaintiff

Estevam as to the Sixth Cause of Action is GRANTED.

    F.   <u>Seventh Cause of Action</u>.

The Seventh Cause of Action is for intentional

misrepresentation.  "'The necessary elements of fraud are: (1)

misrepresentation (false representation, concealment, or

nondisclosure); (2) knowledge of falsity (scienter); (3) intent

to defraud (i.e., to induce reliance); (4) justifiable reliance;

and (5) resulting damage.'" *Alliance Mortgate Co. v. Rothwell,*, 10 Cal.4th 1226, 1239 (1995).

      1.  <u>Genske Mulder</u>.

     Genske Mulder argues that Plaintiff Estevam is unable to establish that Genske Mulder made any misrepresentations to Plaintiff Estevam or that he justifiably relied on any false representation, concealment or nondisclosure.  Genske Mulder notes that it is undisputed that Plaintiff Estevam has never spoken with anyone at Genske Mulder, has never received any documents from Genske Mulder, is unable to identify any Genske Mulder personnel involved in the CVD/Valley Gold professional relationship, and is unable to state any material misrepresentation or omission made by Genske Mulder.

     Plaintiff again relies on the doctrine of indirect representation.  *See discussion supra*.  For the reasons stated above, there is not factual or legal basis to support this claim. Genske Mulder's motion for summary judgment as to the Seventh Cause of Action is GRANTED.

      2.  <u>Downey Brand</u>.

     Downey Brand argues that summary judgment is appropriate as to the Seventh Cause of Action because there is no evidence that Downey Brand made any misrepresentation to the Plaintiff.  The Plaintiff never read the Valley Gold Offering Memorandum or any other document prepared by Downey Brand.  Downey Brand was not involved in the Milk for Equity transaction.  Plaintiff's only evidence to the contrary is the assertion Plaintiff relied on the

opinion of friends, two of whom invested in Valley Gold, in deciding to continue to ship milk to Valley Gold.  However, for the reasons stated above, this evidence is insufficient to create a genuine issue of material fact as to the Seventh Cause of Action.  Downey Brand's motion for summary judgment as to the Seventh Cause of Action is GRANTED.

G. **Eighth Cause of Action**.

The Eighth Cause of Action is for negligent misrepresentation, the elements of which are (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages.  *Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986).

1. **Genske Mulder**.

Genske Mulder moves for summary judgment on the ground that Genske Mulder made no representations to the Plaintiff.

The tort of negligent misrepresentation requires a positive assertion; an implied assertion or misrepresentation by omission is not enough.  *Diediker v. Peelle Financial Corp.*, 60 Cal.App.4th 288, 297-298 (1997).  In *Byrum v. Brand*, 219 Cal.App.3d 926, 942 (1990), the Court of Appeals held that a financial advisor's failure to disclose material facts concerning a land investment did not constitute negligent misrepresentation.

Because Genske Mulder made no representations Plaintiff

1  Estevam, Genske Mulder's motion for summary judgment as to the

2  Eighth Cause of Action is GRANTED.

3          **2.   <u>Downey Brand</u>.**

4       Downey Brand moves for summary judgment as to the Eighth

5  Cause of Action on the ground that Downey Brand made no

6  representations to Plaintiff Estevam.

7       Plaintiff never read the Valley Gold Offering Memorandum or

8  any other document prepared by Downey Brand.  Downey Brand was

9  not involved in the Milk for Equity transaction.  Plaintiff's

10  only evidence to the contrary is the assertion that Plaintiff

11  relied on the opinion of friends, two of whom invested in Valley

12  Gold in deciding to continue to ship milk to Valley Gold.

13  However, for the reasons stated above, this evidence is

14  insufficient to create a genuine issue of material fact as to the

15  Eighth Cause of Action.  Downey Brand's motion for summary

16  judgment as to the Eighth Cause of Action is GRANTED.

17                                  **<u>CONCLUSION</u>**

18       For the reasons stated:

19       1.   Downey Brand and Genske Mulder's motions for summary

20  judgment against Plaintiff Antonio Estevam on the Fourth through

21  Eighth Causes of Action in the Second Amended Complaint ("SAC")

22  are GRANTED;

23       2.   Counsel for Defendants shall prepare and lodge a form of

24  order consistent with this Memorandum Decision within five (5)

25  court days following service of this Memorandum Decision.

26  *///*

1    IT IS SO ORDERED.

2    **Dated:    September 27, 2010**                    **/s/ Oliver W. Wanger**
                                                    UNITED STATES DISTRICT JUDGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26