IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

MANUAL LOPES, et al.,            )        No. CV-F-06-1243 OWW/SMS
                                 )
                                 )        MEMORANDUM DECISION GRANTING
                                 )        DEFENDANTS DOWNEY BRAND AND
              Plaintiffs,        )        GENSKE MULDER'S MOTIONS FOR
                                 )        SUMMARY JUDGMENT AGAINST
       vs.                       )        PLAINTIFF MARIA MACHADO AS
                                 )        TRUSTEE OF THE MACHADO
                                 )        FAMILY TRUST (Docs. 245 &
GEORGE VIEIRA, et al.,           )        246)
                                 )
                                 )
              Defendants.        )
                                 )
_____)

       Defendants Downey Brand LLP ("Downey Brand") and Genske

Mulder & Company ("Genske Mulder") respectively move for summary

judgment or summary adjudication against Plaintiff Maria Machado

as Trustee of the Machado Family Trust on the Fourth through

Eighth Causes of Action in the Second Amended Complaint ("SAC").

       Downey Brand seeks summary judgment or adjudication as to

the Fourth and Fifth Causes of Action on the ground that

Plaintiff's predecessor in interest, Alvaro Machado ("the

Decedent"), did not purchase a security; as to the Fourth through

1

Eighth Causes of Action on the grounds that Plaintiff cannot establish that Downey Brand made an affirmative misrepresentation to the Decedent and that Downey Brand owed no duty to disclose to the Decedent; and on the Fourth through Eighth Causes of Action on the ground that Plaintiff cannot establish reliance or causation.

Genske Mulder seeks summary judgment or adjudication:

A.  Fourth Cause of Action for securities fraud in violation of the Securities Act of 1934 on the ground that Plaintiff Machado did not purchase Valley Gold LLC's securities or any other securities;

B.  Fifth Cause of Action for violation of California securities law on the ground that Plaintiff Machado did not purchase Valley Gold LLC's securities or any other securities;

C.  Sixth Cause of Action for negligence on the grounds that Plaintiff Machado was not a client of Genske Mulder and Genske Mulder did not owe him a duty of care;

D.  Seventh Cause of Action for intentional misrepresentation on the grounds that Plaintiff Machado did not receive or rely on, any material misrepresentation or omission made by Genske Mulder;

E.  Eighth Cause of Action for negligent misrepresentation on the grounds the Plaintiff Machado did not receive or rely on, any material misrepresentation made by Genske Mulder.

A.  <u>GOVERNING STANDARDS</u>.

Summary judgment is proper when it is shown that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56.  A fact is "material" if it is relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  Materiality is determined by the substantive law governing a claim or a defense.  *Id.*  The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party.  *Id.*

The initial burden in a motion for summary judgment is on the moving party.  The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party to defeat summary judgment.  *T.W. Elec.*, 809 F.2d at 630.  The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial."  *Id.*  The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint."  *Id.*  The question to be resolved is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *United States ex rel. Anderson v. N. Telecom, Inc.,*

52 F.3d 810, 815 (9th Cir.1995).  This requires more than the "mere existence of a scintilla of evidence in support of the plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff."  *Id*.  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment."  *Id*.  In *Scott v. Harris*, ___ U.S. ___, 127 S.Ct. 1769, 1776 (2007), the Supreme Court held:

> When opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

As explained in *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099 (9th Cir.2000):

> The vocabulary used for discussing summary judgments is somewhat abstract.  Because either a plaintiff or a defendant can move for summary judgment, we customarily refer to the moving and nonmoving party rather than to plaintiff and defendant.  Further, because either plaintiff or defendant can have the ultimate burden of persuasion at trial, we refer to the party with and without the ultimate burden of persuasion at trial rather than to plaintiff and defendant.  Finally, we distinguish among the initial burden of production and two kinds of ultimate burdens of persuasion: The initial burden of production refers to the burden of producing evidence, or showing the absence of evidence, on the motion for summary judgment; the ultimate burden of persuasion can refer either to the burden of persuasion on the motion or to the burden of persuasion at trial.
>
> A moving party without the ultimate burden of persuasion at trial - usually, but not

**always, a defendant - has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment ... In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial ... In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact ....**

**If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial ... In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything ... If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense ... If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment ... But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion.**

**210 F.3d at 1102-1103.**

    **B.   STATEMENT OF UNDISPUTED FACTS.**

        **1.   Downey Brand.**

    **DBUDF 1.   Downey Brand has never represented Central Valley Dairymen, Inc.**

        **Plaintiff's Response: Although Plaintiff did not respond specifically to this fact, in responses by other Plaintiffs to Downey Brand's motions for summary judgment,**

Plaintiffs disputed this fact, asserting that, on February 28, 2003, Valley Dairymen LLC was formed.  Downey Brand represented CVD in creating that entity, which was a subsidiary of CVD.  The Declaration of Plaintiffs' counsel Douglas Applegate, avers that an invoice, dated March 13, 2003, attached as Exhibit X, demonstrates that Downey Brand was hired by CVD's longstanding counsel, Augustine & Colaw, to form an entity called Valley Dairymen LLC and that Mr. Applegate's "research indicates that Valley Dairymen, LLC was formed as a wholly owned subsidiary of Central Valley Dairymen."

*Downey Brand's Reply*:  In contending that Downey Brand represented CVD in creating Valley Dairymen, Plaintiffs rely on an "unauthenticated, inadmissible" Downey Brand bill sent to Valley Dairymen on March 13, 2003 in care of the law firm, Colaw & Augustine.  Downey Brand asserts that Mr. Applegate's averment Colaw & Augustine was CVD's longstanding counsel means that CVD paid for these services is constructed out of thin air. Downey Brand argues that Mr. Applegate's assertion that Valley Dairymen was a wholly owned subsidiary of CVD is speculative hearsay.  Even if Mr. Applegate's speculation is accepted as fact, Downey Brand asserts that its client was the entity to be formed, Valley Dairymen, LLC, not CVD.  Downey Brand cites California Practice Guide: Professional Responsibility, §§ 3:107.2 - 107.4, stating that "out-of-state authorities have reasoned that an attorney-client relationship exists between the attorney and the corporation (not with the individuals)

6

'retroactively' from the time the attorney is retained and the corporation is actually formed (by filing incorporation papers," § 3:107.2, because "[i]f the person who retains the attorney for the purpose of organizing the corporation is considered the 'client,' any subsequent representation of the corporation by that lawyer would automatically amount to dual representation, resulting in the lawyer's possible disqualification." § 3:107.3. Downey Brand also cites *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.,* 69 Cal.App.4th 1399, 1404 (1999), involving an appeal of the trial court's order disqualifying plaintiff's attorney based on the attorney's having represented plaintiff in connection with a stock offering: "[P]ayment of attorney fees alone does not determine an attorney-client relationship; it is merely a factor."

Plaintiffs also asserted that, on November 4, 2004, CVD paid a $15,000 retainer to Downey Brand for Downey Brand's work to convert Valley Gold debt into equity.

*Downey Brand's Reply*: Plaintiffs' evidence does not create an issue of fact that Downey Brand ever represented CVD.  Downey Brand submits a letter dated November 12, 2004 from Jeffrey Koewler of Downey Brand to Tony Cary regarding "retainer for Valley Gold, LLC:"

> Enclosed please find check number 013378, which you delivered to Downey Brand, in the amount of $15,000.  The check is made out to Downey Brand on a Central Valley Dairymen bank account.  As Chris Delfino stated in his voicemail to you on November 12, 2004, we are returning the check to you because our client

> is Valley Gold, and the matter which you have
> asked us to assist you involves Valley Gold
> and Central Valley Dairymen.  To avoid any
> confusion as to who we represent, we cannot
> accept a check from Central Valley Dairymen.
> If Valley Gold would like to retain Downey
> Brand, please have Valley Gold provide us
> with the retainer check.

Downey Brand notes that the accounting report upon which Plaintiffs rely in asserting that Downey Brand was paid $15,000 by CVD for work in creating CVD has the handwritten notation that the check was not cashed.

*Court's Ruling*: It is UNDISPUTED that Downey Brand never represented CVD.  Plaintiffs' evidence does not create a genuine issue of material fact.[1]

DBUDF 2.  The Decedent did not invest in Valley Gold LLC.

*Plaintiff's Response*: Undisputed as phrased.  Over several years, CVD withheld sums from the Machado dairy's milk checks, which were placed in a trust to be used for acquiring a cheese plant.  CVD ultimately used that trust money to acquire an ownership interest in Valley Gold in CVD's name.  The Decedent thus had a beneficial interest in CVD's ownership.

*Court Ruling*: Plaintiff provides no evidentiary support for this response.  The fact is UNDISPUTED.

DBUDF 3.  The Decedent did not read any of the documents

---

[1]In Downey Brand's statement of undisputed facts in support of its amended motion for summary judgment as to Joseph Lopes as Trustee of the Raymond Lopes Family Trust, Downey Brand asserted the same fact.  (Doc. 277-2, DBUDF 1).  Plaintiff Joseph Lopes as Trustee of the Raymond Lopes Family Trust responded "undisputed" in his response to Downey Brand's statement of undisputed facts. (Doc. 282).

associated with the Valley Gold offering to investors or documents prepared by Valley Gold's accountants.

*Plaintiff's Response*: Undisputed.

DBUDF 4: The Decedent has never retained Downey Brand to represent him nor has he ever spoken to, or heard anything said by, a Downey Brand attorney.

*Plaintiff's Response*: Undisputed.

    2.  <u>Genske Mulder</u>.

    a.  <u>Fourth Cause of Action for Federal Securities Fraud</u>.

GMUDF 1.  The Decedent did not purchase Valley Gold securities.

*Plaintiff's Response*: Undisputed.

GMUDF 2.  The Decedent did not receive or read the Valley Gold Offering Memorandum.

*Plaintiff's Response:* Undisputed.

    b.  <u>Fifth Cause of Action for State Securities Fraud</u>.

GMUDF 3.  The Decedent did not purchase Valley Gold securities.

*Plaintiff's Response*: Undisputed.

GMUDF 4.  The Decedent did not receive or read the Valley Gold Offering Memorandum.

*Plaintiff's Response*: Undisputed.

    c.  <u>Sixth Cause of Action for Negligence</u>.

GMUDF 5.  The Decedent was not a client of Genske Mulder.

1     *Plaintiff's Response*: Undisputed.

2         GMUDF 6.   The Decedent's claim of duty is merely because he

3    was a member of Central Valley Dairymen.

4             *Plaintiff's Response*: Not supported by the

5    evidence cited by Genske Mulder.

6             *Court Ruling*:   Genske Mulder relies on the

7    Decedent's response to Genske Mulder's Interrogatory No. 6, Set

8    One:

9             Interrogatory No. 6.  State the dates during
              which YOU engaged Genske-Mulder to provide
10            YOU 'accounting, and consulting, management
              advisory and investment services' as
11            described in paragraph 38 of the [SAC].

12            Response to Interrogatory No. 6

13            When I became a member of CVD cooperative.

14   Given that Plaintiff concedes that he was never a client of

15   Genske Mulder, this fact is UNDISPUTED.

16            d.   Seventh Cause of Action for Intentional

17   Misrepresentation.

18       GMUDF 7.  The Decedent did not receive any representation

19   made by Genske Mulder, but received representations by Central

20   Valley Dairymen to continue to supply Valley Gold with milk

21   despite non-payment.

22            *Plaintiff's Response*: Undisputed.

23       GMUDF 8.  The Decedent could not identify any Genske Mulder

24   personnel who were involved with CVD or Valley Gold.

25            *Plaintiff's Response*: Undisputed.

26       GMUDF 9.  The Decedent did not receive any documents from

10

Genske Mulder.

> *Plaintiff's Response*: Undisputed.

>           e.   Eighth Cause of Action for Negligent

Misrepresentation.

    GMUDF 10.   The Decedent did not receive any representations

from Genske Mulder.

> *Plaintiff's Response*: Undisputed.

    GMUDF 11.   The Decedent's only claim is for omissions.

> *Plaintiff's Response*: Disputed and not supported

by the evidence cited by Genske Mulder.

> *Court Ruling*:  Genske Mulder relies on the

Decedent's responses to Genske Mulder's Interrogatories Nos. 11-

15, Set One:

> Interrogatory No. 11.

> State all facts on which YOU allege that
> Genske-Mulder intentionally made
> misrepresentations to YOU or intentionally
> withheld material information from YOU in
> face of a duty of disclosure as alleged in
> paragraph 158 of the SAC.

> Response to Interrogatory No. 11.

> We were never informed by GM of any CVD
> investment in VG.  We were never informed
> about the nature of George Vieira's criminal
> involvement with Supreme Specialties.  We
> were not informed of George Vieira's use of
> CVD funds for his own purposes (for example,
> to pay his attorneys).  At all stages, GM
> acted to protect George Vieira.

> Interrogatory No. 12.

> State all facts on which YOU allege that
> Genske-Mulder intended to cause damage to
> YOU, and intended to obtain benefits for

itself at YOUR expense as alleged in
paragraph 165 of the SAC.

Response to Interrogatory No. 12.

See response to interrogatory eleven.

Interrogatory No. 13.

State all facts on which YOU allege that acts
of Genske-Mulder constitute malice,
oppression, and/or fraud as alleged in
paragraph 165 of the SAC.

Response to Interrogatory No. 13.

I would have been given information and
choices about my 'VG investments' had GM not
been trying to hide something.

Interrogatory No. 14.

State all facts known by Genske Mulder to be
false, or which were withheld but that Genske
had a duty to disclose, as alleged in
paragraph 169 of the SAC.

Response to Interrogatory No. 14.

(1) All information regarding CVD investment
in VG

(2) GM's role in transactions and their
relationship with George

Interrogatory No. 15.

State all the facts by which Genske Mulder
knew the 'matters they misrepresented were
false' and that the 'matters they withheld
was [sic] material information that they had
a duty to disclose' as alleged in paragraph
169 of the SAC.

Response to Interrogatory No. 15.

I feel that there are two ways to look at the
situation.  Either (1) GM lied about being
experts in the dairy/agribusiness accounting
consulting field and the statements, reports
and opinions that they provided were terrible

> guesses; or (2) GM knew what they were doing
> and instead of providing us with the actual
> facts, lied, withheld or misrepresented those
> facts in order to take our money.

These discovery responses establish that the Decedent's claim for negligent misrepresentation is based on the alleged omissions by Genske Mulder described in the Decedent's response to Interrogatory No. 11.   UNDISPUTED.

 3.   <u>Plaintiff's Statement of Additional Undisputed Facts</u>.

 PUDF A.   The Decedent was a member of CVD until June or July of 2005.

 PUDF B.   In 2004, CVD began paying late for milk that the Decedent delivered to Valley Gold.

 PUDF C.   The Decedent continued to ship milk to Valley Gold because he believed that the Valley Gold cheese plant was going to be successful.

 PUDF D.   The Decedent's friends at the other dairies were also having financial problems, but they continued to ship their milk to Valley Gold.   Friends like Raymond Lopes, Manuel Lopes and Antonio Estevam said that they still believed the cheese plant was going to be successful.   Because they believed in the plant and continued to ship their milk to Valley Gold, the Decedent did too.

 PUDF E.   When Raymond Lopes and Manuel Lopes quit CVD and stopped shipping their milk to Valley Gold, the Decedent quit too.

13

C.   <u>FOURTH AND FIFTH CAUSES OF ACTION</u>.

Plaintiff concedes that Downey Brand and Genske Mulder are entitled to summary judgment as to the Fourth for securities fraud in violation of the Securities Exchange Act of 1934[2] and the Fifth Causes of Action for violation of California Corporations Code § 25400(d) because the Decedent admits that he did not purchase any Valley Gold security.   Summary judgment as to the Fourth and Fifth Causes of Action is GRANTED as to Downey Brand and Genske Mulder against Plaintiff Maria Machado as Trustee of the Machado Family Trust

D.   <u>SIXTH CAUSE OF ACTION</u>.

The Sixth Cause of Action is for negligence.

1.   <u>Downey Brand</u>.

Downey Brand moves for summary judgment as to the Sixth Cause of Action on the grounds that Plaintiff cannot establish an affirmative misrepresentation made by Downey Brand to the Decedent and that Downey Brand owed no duty of disclosure to the Decedent.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) the breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."  *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339 (1998).  "The existence of a legal duty to

---

[2]The caption of the Fourth Cause of Action is "Securities Fraud: Securities Act of 1934."  However, the allegations of the Fourth Cause of Action make clear that the cause of action is for violation of the Securities Exchange Act of 1934 and Rule 10b-5.

14

use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.*, 118 Cal.App.4th 269, 278 (2004).

Downey Brand asserts that Plaintiff cannot point to an affirmative misstatement made by Downey Brand to the Decedent. Downey Brand quotes *Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1225 (10th Cir.1996), a case addressing a primary liability claim under § 10(b): "Reliance only on representations made by others cannot itself form the basis of liability." "[F]or a cause of action for negligent misrepresentation, clearly a representation is an essential element."

Plaintiff cites *Lovejoy v. AT&T Corp.*, 92 Cal.App.4th 85 (2001), which addresses the concepts of indirect misrepresentation and indirect reliance:

> It is true that California courts recognize the principle of indirect misrepresentation, under which a knowingly false statement is no less actionable because it was made to an intermediary who then *conveyed it* to the party ultimately injured ... However, this doctrine requires that the defendant intend or has reason to expect that it will be '*repeated and acted upon by the plaintiff.*' ...
>
> ... Under the principle of indirect reliance, a fraudulent misrepresentation is actionable if it was communicated to an *agent* of the plaintiff and was acted upon by the agent to the plaintiff's damage.  A classic example of indirect reliance would be a drug manufacturer's misrepresentation to physicians about the safety of its drug.  A patient injured by the drug is permitted to sue the manufacturer for fraud without proof that his doctor repeated the falsehood to him, under the theory that the doctor was

15

1        acting as the plaintiff's agent.

2   **92 Cal.App.4th at 94.  Plaintiff argues that Downey Brand may be**

3   **liable under the theory of indirect misrepresentation and**

4   **indirect reliance.  Plaintiff argues:**

5   Certainly, the defendants knew that the
   members of ... CVD were a tight-knit group
6   that would share information among
   themselves.  And although the Machado dairy
7   did not invest in Valley Gold, it was a
   member of CVD; and Mr. and Mrs. Machado
8   talked about the plant and its operations
   with their friends, including plaintiffs
9   Raymond Lopes, Manuel Lopes and Antonio
   Estevam.  (Decl. Mary Machado at ¶ 4.)  And
10   because these friends believed what they had
   been told and continued to ship milk to
11   Valley Gold, so too did the Machado dairy.
   (Decl. Mary Machado at ¶¶ 4-5.)

12

13   The situation is thus not unlike a small
   investor who relies upon Warren Buffet's
   investment decisions and mimics them on a
14   smaller scale.  If Warren Buffet is misled by
   a false prospectus, so too is the small
15   investor - even without receiving the
   misleading document.

16

17   The defendants certainly knew that the non-
   investing members of CVD would be heavily
   influenced by the decisions of those who *did*
18   invest.  Indeed, they relied upon it; for the
   Offering Memorandum stated that Valley Gold
19   would 'purchase from CVD *all* of the Company's
   milk requirements used in the manufacture of
20   the Company cheese products.'  (Index of
   Exhibits, Exhibit 1 at page 8, last
21   sentence.)  The defendants did not just have
   to convince the investors to invest; they
22   also had to convince the other members of CVD
   to supply Valley Gold with milk.  And they
23   accomplished that task by convincing the core
   group of investors with incomplete and
24   misleading statements, knowing that the core
   group would convince the other members of CVD
25   to participate indirectly - by shipping their
   milk to CVD.

26

1    However, Plaintiff presents no evidence that Downey Brand

2    intended or had reason to expect that any misrepresentation

3    concerning Valley Gold would be repeated and acted upon by a

4    person who did not invest in Valley Gold and presents no evidence

5    that a friend of the Decedent such as Manuel Lopes was acting as

6    the Decedent's agent.

7    Downey Brand also moves for summary judgment on the ground

8    that it did not have a duty to disclose running to the Decedent

9    As explained in *Fox v. Pollack*, 181 Cal.App.3d 954, 960

10   (1986):

> With certain exceptions, an attorney has no
> obligation to a nonclient for the
> consequences of professional negligence -
> this is, the attorney is not burdened with
> any duty toward nonclients merely because of
> his or her status as an attorney.  The
> existence of such a duty is a question of law
> dependent upon 'a judicial weighing of the
> policy considerations for and against the
> imposition of liability under the
> circumstances ...' ... The imposition of a
> duty of professional care toward nonclients
> has generally been confined to those
> situations wherein the nonclient was an
> intended beneficiary of that attorney's
> services, or where it was reasonably
> foreseeable that negligent service or advice
> to or on behalf of the client would cause
> harm to others. '[T]he determination whether
> in a specific case the [attorney] will be
> held liable to a third person not in privity
> is a matter of policy and involves the
> balancing of various factors, among which are
> the extent to which the transaction was
> intended to affect the plaintiff, the
> foreseeability of the harm to him, the degree
> of certainty that the plaintiff suffered
> injury, the closeness of the connection
> between the [attorney's] conduct and the
> injury, and the policy of preventing future
> harm ...'....

Downey Brand notes that Plaintiff concedes that the Decedent was not a client of Downey Brand, but pleads that Downey Brand represented CVD and Valley Gold.  Downey Brand cites *La Jolla Cove Motel and Hotel Apartments, Inc. v. Superior Court*, 121 Cal.App.4th 773, 784 (2004):

> In representing a corporation, an attorney's client is the *corporate entity,* not individual shareholders or directors, and the individual shareholders or directors cannot presume that corporate counsel is protecting their interests.

Rule 3-600(E), State Bar Rules of Professional Conduct, provides:

> A member representing an organization may also represent any of its ... members, shareholders, or other constituents, subject to the provisions of rule 3-310.  If the organization's consent to the dual representation is required by rule 3-310, the consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members.

Downey Brand asserts that Plaintiff concedes there was no agreement by either CVD or Valley Gold that Downey Brand represent the Decedent.

Downey Brand asserts that it did not represent CVD. Plaintiff responds that Downey Brand did not "exit the scene" after the Offering:

> Rather, on November 4, 2005, Downey Brand accepted a $15,000 retainer *paid by CVD* which was then owed $30 million in unpaid milk, and it then used that retainer to prepare an agreement to try to cram down the conversions of milk debt for equity, despite the lack of necessary consensus or corporate formalities.

18

1    However, the evidence is that Downey Brand was not paid by

2  CVD and that the $15,000 check was returned by Downey Brand to

3  CVD uncashed because Downey Brand's client was Valley Gold, not

4  CVD.  Plaintiff presents no contrary evidence.

5    Downey Brand further argues that, even if it did represent

6  CVD, a cooperative corporation is distinct from its members,

7  citing *Schuler v. Meschke*, 435 N.W.2d 156, 162 (Minn.App.1989):

8           An incorporated cooperative is a legal
            entity, separate and apart from its members.
9           18 Am.Jur.2d *Cooperative Associations*, § 3,
            page 263.  North Dakota law governing
10          cooperatives recognizes a distinction between
            a cooperative and its members ... Minnesota
11          has similar laws.

12  Although Downey Brand represented Valley Gold, no duty to the

13  Decedent arises from this fact, Downey Brand contends, because

14  the Decedent did not purchase any Valley Gold security.

15    Downey Brand's motion for summary judgment against Plaintiff

16  as to the Sixth Cause of Action for negligence is GRANTED.

17           2.  <u>Genske-Mulder</u>.

18    Genske Mulder moves for summary judgment on the ground that

19  Plaintiff cannot establish that Genske Mulder owed the Decedent a

20  duty of care.

21     In *Bily v. Arthur Young & Co.*, 3 Cal.4th 370 (1992), the

22  California Supreme Court held that an accounting firm can be held

23  liable for general professional negligence in conducting an audit

24  of financial statements only to the person or entity contracting

25  for the accountant's services, and, in that case, the accounting

26

firm's sole client was the company.[3]   The Supreme Court stated:

> [W]e hold that an auditor's liability for general negligence in the conduct of an audit of its client financial statements is confined to the client, i.e., the person who contracts for or engages the audit services. Other persons may not recover on a pure negligence theory.

3 Cal.4th at 406.   The Supreme Court noted, however:

> In theory, there is an additional class of persons who may be the practical and legal equivalent of 'clients.'   It is possible the audit engagement contract might expressly identify a particular third party or parties so as to make them express third party beneficiaries of the contract.   Third party beneficiaries may under appropriate circumstances possess the rights of parties to the contract ... This case presents no third party beneficiary issue.   Arthur Young was engaged by the company to provide audit reporting to the company.   No third party is identified in the engagement contract. Therefore, we have no occasion to decide whether and under what circumstances express third party beneficiaries of audit engagement contracts may recover as 'clients' under our holding.

*Id.* at 406 n.16.

Because it is undisputed that the Decedent never retained Genske Mulder as his accountant or obtained professional services from Genske Mulder and, Genske Mulder asserts, there is no evidence that Genske Mulder is legally responsible for CVD's failure to pay the Decedent for his milk, Genske Mulder contends that it is entitled to summary judgment as to the Sixth Cause of

---

[3]**The California Supreme Court further held that an accountant may be held liable for negligent misrepresentation to third parties who are known to the accountant and for whose benefit the audit report was rendered.**

1  Action.

2      Plaintiff responds that the fact the Decedent was not a

3  client of Genske Mulder does not compel summary judgment in favor

4  of Genske Mulder: "The law is not, and never has been, that

5  rigid."

6      Plaintiff cites no case authority for this proposition.

7  However, in Plaintiffs' opposition to the motion to dismiss the

8  First Amended Complaint, Plaintiff cited *Murphy v. BDO Seidman,*

9  *LLP,* 113 Cal.App.4th 687 (2003), as authority that liability for

10 negligence does not depend on a contractual or professional

11 relationship.

12     In *Murphy*, scores of stockholders filed an amended complaint

13 alleging negligent and intentional misrepresentation against two

14 accounting firms for issuing financial statements overstating the

15 value of two corporations in the process of merging upon which

16 the stockholders relied in approving the merger, buying stock in

17 one or both of the corporations.  Following the merger, the

18 corporation went bankrupt causing the stockholders to lose their

19 investments.  The trial court sustained the accounting firms'

20 demurrers without leave to amend.  On appeal, the accounting

21 firms argued that their liability for the inaccuracies in their

22 financial statements was only to their clients, the two

23 corporations, and therefore no duty of care was owed to third

24 parties.  The Court of Appeal disagreed:

25         *Bily* imposes on respondents a duty of care to
           more than just their clients.  Respondents
26         owed a duty to anyone whom they (1) should

21

1     have reasonably foreseen would rely on their
    intentional misrepresentations, or (2) knew
2     with substantial certainty would rely on
    their negligent misrepresentations.  (*Bily,*
3     *supra*, 3 Cal.4th at pp.413-415.)  The
    complaint alleges respondents knew the
4     proposed merger of WIN and Struthers would
    induce investors in Struthers to rely on
5     financial statements about WIN in
    anticipation of the two companies becoming
6     one.  In addition, the complaint alleges
    respondents knew Struthers investors would
7     rely on WIN's financial statements in
    deciding whether to approve the merger
8     itself.  The complaint therefore alleges a
    duty from respondents to Struthers'
9     shareholders, making respondents liable to
    those shareholders for their
10     misrepresentation.

11     Plaintiff also cited *Cabanas v. Gloodt Associates,* 942

12 F.Supp. 1295, 1308-1309 (E.D.Cal.1996), *aff'd,* 141 F.3d 1174 (9th

13 Cir.1998), in their opposition to the motion to dismiss the First

14 Amended Complaint.  At issue in *Cabanas* was whether an appraiser,

15 when conducting an appraisal of a going concern, owes a duty to

16 the manager or owner of the property not to negligently harm its

17 interests.  The District Court noted that the "general rule

18 against recovery for negligent interference with contract or

19 prospective economic advantage is subject to one exception: where

20 there is a 'special relationship' between the parties."  *Id*. at

21 1308.  The District Court stated:

22     Whether such a special relationship exists is
    determined by examining six factors:
23

24         (1) the extent to which the
        transaction was intended to affect
        the plaintiff;
25

26         (2) the foreseeability of harm to
        the plaintiff;

                **(3)  the degree of certainty that the plaintiff suffered injury;**

                **(4)  the closeness of the connection between the defendant's conduct and the injury suffered;**

                **(5)  the moral blame attached to the defendant's conduct; and**

                **(6)  the policy of preventing future harm.**

*Id.*

Here, there is no evidence that the Decedent relied on any representations made by Genske Mulder; rather, the evidence is that the Decedent relied on the opinions of his friends, such as Plaintiffs Raymond Lopes and Manuel Lopes, that the cheese plant was going to be successful, in continuing to ship milk to Valley Gold.  There is no evidence as to the basis of his friends' opinions,  what they told the Decedent, that Genske Mulder knew of the existence of the friends, or that would be reading and relying on financial statements or projections.

Plaintiff cites *Lovejoy v. AT&T Corp., supra*, 92 Cal.App.4th at 95 (2001), which addresses the concepts of indirect misrepresentation and indirect reliance.  Plaintiff argues that Genske Mulder may be liable under the theory of indirect misrepresentation and indirect reliance.  However, Plaintiff presents no evidence that Genske Mulder intended or had reason to expect that any misrepresentation concerning Valley Gold would be repeated and acted upon by a person who did not invest in Valley Gold and presents no evidence that the Decedent's friends were

1    acting as the Decedent's agent.

2         Plaintiff asserts that Genske Mulder is subject to

3    negligence liability under the derivative claim asserted on

4    behalf of Valley Gold.

5         Plaintiff concedes that the Decedent did not purchase a

6    Valley Gold security, i.e., that he was not a shareholder of

7    Valley Gold.   A derivative action must be brought by the

8    shareholders on behalf of the corporation.   *See* California

9    Corporations Code § 800(b); Rule 23.1, Federal Rules of Civil

10   Procedure.   Therefore, he cannot base his claim of negligence

11   against Genske Mulder on derivative liability.

12        Plaintiff further argues that the "whole range of facts is

13   much more damaging" than Genske Mulder will admit:

14              As the cheese plant faltered and lost money
                in the first six months, Paul Anema from
15              Genske Mulder prepared a chart for a planned
                meeting showing that Valley Gold was selling
16              its cheese at about half the established
                market rate.   Mr. Vieira objected, and Mr.
17              Anema complied, and he hid the chart from the
                light of day.   Genske Mulder every month
18              reconciled CVDs [sic] accounts and processed
                its bills, and saw every month the bills for
19              Mr. Vieira's criminal attorneys.   Those bills
                leave no doubt that Mr. Vieira was actively
20              negotiating a plea deal, was planning on
                going to prison, and was guilty of securities
21              fraud *in the operation of a cheese plant* in
                Manteca, California. (See Plaintiffs'
22              Exhibits N through V.).

23        None of these representations were made by Genske Mulder to

24   the Decedent.   The evidence is undisputed that the Decedent never

25   received or read the Valley Gold Offering Memorandum, that he did

26   not receive any documents from Genske Mulder and did not receive

                                  24

any representations from Genske Mulder.

Genske Mulder's motion for summary judgment against Plaintiff as to the Sixth Cause of Action is GRANTED.

E.   <u>SEVENTH CAUSE OF ACTION</u>.

The Seventh Cause of Action is for intentional misrepresentation.

"'The necessary elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.'" *Alliance Mortgate Co. v. Rothwell,*, 10 Cal.4th 1226, 1239 (1995).

1.   <u>Downey Brand</u>.

Downey Brand argues that summary judgment is appropriate as to the Seventh Cause of Action because there is no evidence that Downey Brand made any misrepresentation to the Decedent.   The Decedent never read the Valley Gold Offering Memorandum or any other document prepared by Downey Brand.   Downey Brand was not involved in the Milk for Equity transaction.   Plaintiff's only evidence to the contrary is the assertion that the Decedent relied on the opinion of friends, two of whom invested in Valley Gold in deciding to continue to ship milk to Valley Gold. However, for the reasons stated above, this evidence is insufficient to create a genuine issue of material fact as to the Seventh Cause of Action as to Plaintiff Maria Machado as Trustee of the Machado Family Trust.   Downey Brand's motion for summary

judgment as to the Seventh Cause of Action is GRANTED.

    2.   <u>Genske Mulder</u>.

    Genske Mulder moves for summary judgment as to the Seventh Cause of Action on the ground that Plaintiff admits that Genske Mulder made no representations to the Decedent.   Genske Mulder argues:

> Mr. Machado's testimony and discovery responses disclose that merely because Genske Mulder provided professional services to CVD and/or Valley Gold, Genske Mulder should have informed him of Mr. Vieira's criminal prosecution and the infeasibility of the Valley Gold cheese production ... Most importantly, Mr. Machado's discovery response assert *Ipsi Dixit* that because Genske Mulder provided professional services to CVD and/or Valley Gold, Genske Mulder should have advised him (a non client) not to sell his milk to CVD, who ultimately sold his milk to Valley Gold.

Genske Mulder asserts that the Decedent's discovery responses fail to establish that the Decedent relied on any representation or omission made by Genske Mulder and that this evidence fails to establish that Genske Mulder had an intent to defraud the Decedent.

    Plaintiff again relies on the doctrine of indirect representation.  *See discussion supra*.  For the reasons stated above, Genske Mulder's motion for summary judgment as to the Seventh Cause of Action is GRANTED.

    F.   <u>Eighth Cause of Action</u>.

    The Eighth Cause of Action is for negligent misrepresentation, the elements of which are (1) a

misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages. *Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986).

        1.  <u>Downey Brand</u>.

Downey Brand moves for summary judgment as to the Eighth Cause of Action on the ground that Downey Brand made no representations to the Decedent.

The Decedent never read the Valley Gold Offering Memorandum or any other document prepared by Downey Brand.  Downey Brand was not involved in the Milk for Equity transaction.  Plaintiff's only evidence to the contrary is the assertion that the Decedent relied on the opinion of friends, two of whom invested in Valley Gold in deciding to continue to ship milk to Valley Gold.  However, for the reasons stated above, this evidence is insufficient to create a genuine issue of material fact as to the Seventh Cause of Action.  Downey Brand's motion for summary judgment as to the Eighth Cause of Action is GRANTED.

        2.  <u>Genske Mulder</u>.

Genske Mulder moves for summary judgment on the ground that Genske Mulder made no representations to the Decedent and contends that Plaintiff cannot rely on the alleged omissions described in the Decedent's discovery responses.

The tort of negligent misrepresentation requires a positive

27

assertion; an implied assertion or misrepresentation is not enough.  *Diediker v. Peelle Financial Corp.*, 60 CalApp.4th 288, 297-298 (1997).  In *Byrum v. Brand*, 219 Cal.App.3d 926, 942 (1990), the Court of Appeals held that a financial advisor's failure to disclose material facts concerning a land investment did not constitute negligent misrepresentation.

Because Genske Mulder made no representations to the Decedent and the Decedent's discovery responses establish that his claims against Genske Mulder are based on alleged omissions, Genske Mulder's motion for summary judgment as to the Eighth Cause of Action is GRANTED.

<u>CONCLUSION</u>

For the reasons stated:

1.  Downey Brand and Genske Mulder's motions for summary judgment against Plaintiff  Maria Machado as Trustee of the Machado Family Trust on the Fourth through Eighth Causes of Action in the Second Amended Complaint ("SAC") are GRANTED;

2.  Counsel for Defendants shall prepare and lodge a form of order consistent with this Memorandum Decision within five (5) court days following service of this Memorandum Decision.

IT IS SO ORDERED.

Dated:   September 27, 2010            /s/ Oliver W. Wanger
                                       UNITED STATES DISTRICT JUDGE