**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MANUEL LOPES, et al., | Case No.: 1:06-CV-01243 JLT |
| Plaintiffs, | ORDER RE: MOTIONS IN LIMINE |
| v. | (Docs. 414, 464, 466, 468, 472, 473, 474) |
| GEORGE VIERA, et al., | |
| Defendants. | |

The parties' motions in limine are now pending before the Court. Plaintiffs ("Plaintiff") filed four motions in limine, while Defendant George Vieira ("Defendant") filed three motions in limine. For the reasons set forth below, Plaintiffs' motions in limine are **DENIED**; Defendant's motions in limine are **DENIED**.

## I.   BACKGROUND

Plaintiffs alleged that Defendant induced them, individually and through Central Valley Dairymen, to invest more than $530,000 in the formation of a corporation, Valley Gold, and to supply millions of dollars worth of milk to Valley Gold, for which they were never paid. Plaintiffs assert Defendant caused them to believe, fraudulently, that Valley Gold would manufacture cheese for which there was a ready market.

Defendant filed his Motions in Limine Nos. 1 and 2 on August 4, 2011 (Docs. 413-14), and Plaintiffs filed Motion in Limine No. 1 on August 5, 2011 (Doc. 416). However, after these motions

were filed, the trial date was vacated (Doc. 424), and the hearings on motion in limine were vacated. (Doc. 448).

On January 27, 2012, the Court entered its pretrial order, re-setting the trial for March 19, 2012, and setting forth applicable deadlines. (Doc. 463). Pursuant to the deadlines set forth in the Court's order, the parties filed motions in limine on February 10, 2012 (Docs. 464-74) and filed their respective oppositions to the motions on February 17, 2012 (Docs. 476-82). In addition, Defendant withdrew Motion in Limine No. 1 (Doc. 470), and Plaintiffs withdrew their Motion in Limine No. 1 (Doc. 471). On March 2, 2012, the Court heard the oral arguments of counsel on the remaining motions in limine.

At the hearing, it was agreed that Plaintiffs were barred from pursuing the sixth cause of action for themselves individually and CVD had been dismissed. Thus, the only remaining possibility was Plaintiffs pursuing the action on behalf of Valley Gold. Plaintiffs counsel reminded the Court that they could not dismiss the cause of action on behalf of Valley Gold without Court approval and making a sufficient showing. However, it was agreed that the cause of action is not viable. Therefore, the Court **DISMISSES** the sixth cause of action. Thus, Defendant's motion in limine number 4 is **MOOT**.

Moreover, as to the second cause of action seeking rescission brought under the federal securities law, it is undisputed that the statute of limitations had expired. Thus, the Court **DISMISSES** this cause of action **only** as to the federal claim. The second cause of action based upon state law remains viable.

Finally, at the hearing, Defendant admitted that he is not seeking any affirmative relief on the counter complaint and moved the Court to dismiss it. Plaintiffs had no objection and the parties agreed to bear their own costs on this counter complaint. Thus, Court **DISMISSES WITHOUT PREJUDICE** the counter complaint with each side bearing their own costs.

## II.   LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained motions *in*

2

1  *limine* "allow parties to resolve evidentiary disputes ahead of trial, without first having to present
2  potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004-05 (9th Cir.
3  2003) (citations omitted).  Likewise, the Seventh Circuit found a motions in limine is"an important
4  tool available to the trial judge to ensure the expeditious and evenhanded management of the trial
5  proceedings." *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

6        Generally, motions in limine that seek exclusion of broad and unspecific categories of
7  evidence are disfavored.  *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th
8  Cir. 1975).  A court "is almost always better situated during the actual trial to assess the value and
9  utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007); *Koch v.
10 Koch Industries, Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998).  Therefore, the Sixth Circuit
11 explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in
12 trial]" as opposed to ruling on a motion in limine.  *Sperberg*, 519 F.2d at 712.

13       "[A] motion in limine should not be used to resolve factual disputes or weigh evidence," *C &
14 E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the
15 province of the jury.  *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000).

16 **III.   PLAINTIFFS' MOTIONS IN LIMINE**

17       Plaintiffs seek to preclude Defendant from introducing evidence regrading an injury from
18 executing a personal grantee on the loan from Land O' Lakes to Valley Gold, and injuries suffered
19 by Premio Investment Company and Valley Gold.  Specifically, Plaintiffs seek:

20      <u>Plaintiffs' Motion in Limine No. 2</u>: To preclude George Vieira from introducing
21      evidence or argument regarding his purported injury from executing a personal guaranty on the loan from Land O' Lakes to Valley Gold, LLC. (Doc. 472).

22      <u>Plaintiffs' Motion in Limine No. 3</u>: To preclude George Vieira from introducing
23      evidence or argument regarding the purported injury suffered by Premio Investment Company when Valley Gold, LLC failed. (Doc. 473).

24      <u>Plaintiffs' Motion in Limine No. 4</u>:  To preclude George Vieria from introducing
25      evidence or argument regarding the purported injury suffered by Valley Gold, LLC when
26      Plaintiffs allegedly withdrew company money without authorization, and when Plaintiffs allegedly ceased proving milk to Valley Gold and instead shipped it to Foster Farms. (Doc. 474).

27     **A.   Plaintiffs' Motion in Limine No. 2**

28       According to Plaintiffs, any injury to Defendant from executing a personal guarantee on the

1  loan from Land O' Lakes "is fatally speculative." (Doc. 472 at 1).  Further, Plaintiffs assert, "Land
2  O' Lakes foreclosed in a non-judicial foreclosure sale and reclaimed the . . . facility on April 17,
3  2006," and as a result, any claim by Land O' Lakes on the personal guaranty would be untimely.
4  *Id*. at 2-3.
5        On the other hand, Defendant argues the motion "should be denied because the evidence is
6  not speculative." (Doc. 476 at 6).  Defendant asserts he invested $500,000 in Valley Gold through
7  Premio Investment Company, and guaranteed the $5 million note.  *Id.*  According to Defendant, this
8  evidence is relevant to show he "had a major financial stake in Valley Gold, and that he was
9  committed to its success."  *Id.*  In addition, Defendant asserts he "is not seeking money damages for
10 either the $500,000 that he invested through Premio or the $5 million guarantee," and concludes the
11 motion in limine should be denied.  *Id.* at 7.
12       Significantly, evidence of Defendant's "guaranty on the loan from Land O' Lakes" may
13 demonstrate whether Defendant had a financial stake in the success of Valley Gold.  "Relevant
14 evidence is defined as "evidence having any tendency to make the existence of any fact that is of
15 consequence to the determination of the action more probable or less probable than it would be
16 without the evidence." Fed. R. Evid. 401.  Further, relevancy is interpreted "broadly to encompass
17 any matter that bears on, or that reasonably could lead to other matter that could bear on any issue
18 that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 427 U.S. 340, 351 (1978).
19 Because the evidence of Defendant's investments is relevant to his defense, Plaintiffs' Motion in
20 Limine No. 2 is **DENIED**.
21       **B.**     **Plaintiffs' Motions in Limine No. 3**
22       Plaintiffs contend, "Premio Investment Company is not a party to this lawsuit, and Mr. Vieira
23 lacks standing to prosecute claims for any losses that the entity may have suffered." (Doc. 473 at 1).
24 Likewise, Plaintiffs argue Valley Gold "is not a party to Mr. Vieira's counterclaim, and Mr. Vieira
25 lacks standing to prosecute claims for any losses that the entity may have suffered." (Doc. 474 at 1-
26 2).  According to Plaintiffs,
27     Under clear law, a claim may only be pursued by the real party in interest.  And when an
        individual has established a limited liability company and has conducted business
28     through that entity, then it is the *entity* that is the real party.  The underlying shareholders

4

or members lack standing to sue.

(Doc. 473 at 3; Doc. 474 at 3) (citing *Westwood v. City of Hermiston*, 787 F. Supp. 2d 1174, 1188 (D. Or. 2011); *PacLink Communications Intern. Inc. v. Superior Court*, 90 Cal. App. 4th 958, 965-66 (2011)). Further, Plaintiffs argue any claim on behalf of the Premio Investment is time-barred. Doc. 473 at 3.

As noted above, Defendant's counter complaint has been dismissed and the parties agree that Defendant is permitted to introduce evidence of his motivation as demonstrated by the $500,000 investment in Valley Gold through Premio and the $5 million personal guarantee. Therefore, Plaintiffs' Motions in Limine No. 3 is **DENIED**.

    **C.**    **Plaintiffs' Motions in Limine No. 4**

Plaintiff's anticipate that Defendant will introduce evidence that they withdrew money from Valley Gold and diverted milk deliveries from Valley Gold to a different creamery. (Doc. 474) They argue that Defendant lacks standing to seek damages on behalf of Valley Gold and, therefore, should be precluded from introducing this evidence. *Id*. at 2-3.

Defendant argues that he is not seeking damages for Valley Gold. (Doc. 478 at 6) Instead, he seeks to introduce evidence that he had made a "substantial commitment to the success" Valley Gold and that it was the action of the Plaintiffs that, ultimately, caused the collapse of Valley Gold. *Id.*

Because Defendant is not seeking to obtain damages for Valley Gold and, indeed, the counter claim has been dismissed, Plaintiffs' basis to exclude this evidence fails. On the other hand, Defendant is entitled to demonstrate that there were causes of the failure of Valley Gold rather than the theory advanced by Plaintiffs. Therefore, Plaintiffs' Motions in Limine No. 4 is **DENIED**.

**IV.**    **DEFENDANT'S MOTIONS IN LIMINE**

> Defendant's Motion in Limine No. 2: To preclude Plaintiffs from introducing evidence or arguments asserting that Defendant committed a violation of federal or state securities laws or committed negligence or made any misrepresentation based upon *Janus Capital Group v. First Derivative Traders*, ____ U.S. ____, 131 S.Ct. 2296, 2302 (2011). (Doc. 414).
>
> Defendant's Motion in Limine No. 3: To preclude Plaintiffs from introducing evidence or arguments asserting that they are entitled to rescission of the contract investing in Valley Gold. (Doc. 464).

5

Defendant's Motion in Limine No. 4:  To preclude Plaintiffs from introducing evidence or arguments asserting that Defendant committed negligence. (Doc. 466).

Defendant's Motion in Limine No. 5: To preclude Plaintiffs from introducing evidence or arguments asserting that Defendant committed a violation or state securities laws. (Doc. 468).

**A.     Defendant's Motion in Limine No. 2**

In his motion in limine #2, Defendant seeks an order prohibiting Plaintiffs from presenting evidence or argument that he violated federal or state securities laws, committed negligence or misrepresentation related to the statements made in the offering memorandum for Valley Gold.

The final memorandum stated,

> The Operating Projections and the financial figures and projections contained in this Memorandum were prepared by the Company's accountants. **These financial documents, figures and projections are based, in large part, on financial documents provided to the Company by Land O' Lakes and George Vieira.** The Company has reviewed certain financial data prepared by Land O' Lakes regarding the operation of the Cheese Plant. The financial documents provided to the Company by Land O' Lakes were not prepared specifically for use by the Company. The financial documents were prepared by Land O' Lakes for their own internal use. The Company has not obtained an independent audit of Land O' Lakes operations to verify the accuracy of such information. Further, Land O' Lakes is a corporation with facilities and operations in numerous states and revenue in the billions of dollars. The Cheese Plant is just a portion of Land O' Lakes overall business operations. As a result, the financial information provided by Land O' Lakes to the Company regarding Cheese Plant may reflect costs and savings that won't be realized by the Company in its operations of the Cheese Plant. Further, after the Company has had the opportunity to operate the Cheese Plant for a period of time, the Company may decide to adopt different accounting practices which, if these practices had been adopted by Land O' Lakes, would have changed the financial information provided to the Company.

Doc. 330, Ex. B, 6 (emphasis added) Likewise, the offering memorandum noted that,

> Mr. Vieria, one of the principal organizers of the Company and this transaction is currently the chief executive officer of CVD. George Vieria, was, for a short period of time, an officer of Suprema West, Inc. ("Suprema West"). Suprema West is a subsidiary of Suprema Specialties, Inc. ("Suprema"). Suprema and Suprema West are in bankruptcy. Suprema is also the subject of an investigation being conducted by the Securities and Exchange Commission and the U.S. Attorney's Office. Assertions have been made that financial data for Suprema was also misrepresented. Mr. Vieira has been contacted by the U.S. Attorney's Office and may be a subject of this investigation. No formal charges have been brought against Mr. Vieira.

(Doc. 330-2 at 12) Plaintiffs contend they were rushed into committing to Valley Gold based upon a draft offering memorandum that did not contain this language.

Notably, Rule 10b-5, promulgated under Section 10(b), makes it unlawful,

     (a)    To employ any device, scheme, or artifice to defraud,
     (b)    To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
     (c)    To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 CFR § 240.10b-5. Therefore, Defendant contends that he may not be held liable because he did not "make" the statements in the initial offering.

In *Janus Capital Group v. First Derivative Traders*, ____ U.S. ____, 131 S.Ct. 2296, 2302 (2011), the Court determined that

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by — and only by — the party to whom it is attributed.

*Id*. The Court further clarified "as long as a statement is made, it does not matter whether the statement was communicated directly or indirectly to the recipient." *Id*. at 2305 n. 11. The Court continued,

> In this case, we need not define precisely what it means to communicate a "made" statement indirectly because none of the statements in the prospectuses were attributed, explicitly or implicitly, to JCM. Without attribution, there is no indication that Janus Investment Fund was quoting or otherwise repeating a statement originally "made" by JCM . . . More may be required to find that a person or entity made a statement indirectly, but attribution is necessary.

*Id*.

Here, unlike in *Janus*, the offering statement specifically attributes information to Defendant and specifically reports that the financial information provided in it, including the figures and projections, were based upon information provided by Defendant and Land O' Lakes. The offering provides significant further discussion that the information provided by Land O' Lakes had not been verified and that relying on this information could provide an incorrect view of the likely success of Valley Gold. The offering made no such similar disavowal as to Defendant. Given the explicit attribution to Defendant, *Janus* does not preclude liability based upon Defendant making an indirect

7

statement to Plaintiffs.[1,2]

On the other hand, Defendant focuses on the language of the offering memorandum related to his criminal investigation. As to this language, there is no attribution of this information to him or anyone else. Thus, he contends that he cannot be held liable under *Janus* for any insufficiency in it. However, this argument misses the mark.

Plaintiffs assert that they *never* received the offering memorandum that contained this language. They assert that Defendant was obligated to report to them about the criminal investigation and that his failure to do so was a material omission from the offering.[3] They argue further that Defendant was a "maker" of statements contained in the offering, related to the financial condition and projections of Valley Gold. Thus, Defendant's omission of the information related to the criminal investigation subjects him to liability in keeping with *Janus*. Alternatively, they argue that *Janus* does not address misrepresentations by omission.

---

[1] Moreover, in *Nunes v. Cent. Valley Dairymen*, 2010 Cal. App. Unpub. LEXIS 8767 at *32 (Cal. App. 5th Dist. Nov. 4, 2010), without benefit of *Janus,* determined this question against Defendant on the rationale of *Janus*. On appeal, the Court held affirmed that Defendant *was liable* for misrepresentations made in the offering memorandum. The Court held, though "it may be that information was disclosed to the investor-plaintiffs primarily through the written offering memorandum prepared by third-parties. Yet the jury reasonably could infer that much of the information contained in the memorandum came from George Vieira and that he provided it to Downey Brand with the intent and expectation that they would convey it to the investor-plaintiffs. George Vieira does not claim that Downey Brand mischaracterized the information given to them; he only contends he did not make the representations to the investor-plaintiffs. George Vieira cites no authority for the proposition that his intentional and fraudulent use of an intermediary absolves him of responsibility for the misstatements." *Id*.

[2] Indeed, "[t]he maker of a fraudulent misrepresentation is subject to liability . . . if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 171-172 (2008) (quoting the Restatement (Second) of Torts § 533 at 72-73 (1977)).

[3] Moreover, in *Nunes v. Cent. Valley Dairymen*, 2010 Cal. App. Unpub. LEXIS 8767 at *33-34 (Cal. App. 5th Dist. Nov. 4, 2010), the Fifth District Court of Appeal determined, "George Vieira is incorrect when he states that he had no "transactional relationship" with the investor-plaintiffs sufficient to impose a duty upon him to disclose truthfully the facts concerning Valley Gold. While George Vieira was not directly selling shares in Valley Gold to the investor-plaintiffs, he was a copurchaser of such shares. As such, his "investment" (albeit purloined from CVD, as noted above) could only be successful if the investor-plaintiffs and others were persuaded to invest in Valley Gold along with him. Between George Vieira's asserted management role as the key to Valley Gold's success, [Footnote] and his role as copurchaser of shares in Valley Gold, we conclude that there is ample "transactional relationship" between George Vieira and the investor-plaintiffs to support a duty to disclose. (See *LiMandri v. Judkins, supra*, 52 Cal.App.4th at p. 337.)" The Court based Defendant's "key" role on the offering memorandum which read, "The Company's success in managing and operating the Cheese Plant is dependent almost exclusively upon the abilities of Mr. Vieira" and two other persons." *Id*. at n. 10

In any event, under Rule 10b-5(a) and (c), "a defendant who uses a 'device, scheme, or artifice to defraud,' or who engages in 'any act, practice, or course of business which operates or would operate as a fraud or deceit,' may be liable for securities fraud." *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011) (quoting 17 C.F.R. § 240.10b-5). Generally, a claim asserting a fraudulent scheme "cannot be premised on the alleged misrepresentations or omissions that form the basis of a Rule 10b-5(b) claim." *Id*. (internal quotation marks and citation omitted). However, a defendant may "be liable as part of a fraudulent scheme based upon misrepresentations and omissions under Rules 10b-5(a) or (c) when the scheme also encompasses conduct beyond those misrepresentations." *Id*.

Here, Plaintiffs allege that in addition to the alleged misrepresentations in the offering, Defendant committed other acts that comprised a "scheme" to defraud them.  For example, Plaintiffs allege that Defendant misrepresented the causes of Central Valley Dairymen's financial problems, the size and strength of the cheese and milk markets and other misrepresentations related to the operations of Valley Gold that misstated the likelihood of Valley Gold's success.  Thus, *Janus* would not preclude imposition of liability.

Likewise, according to state securities law,

It is unlawful for any person, directly or indirectly, in this state:

[¶]

If such person is a broker-dealer or other person selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading.

Cal. Corp. Code 25400(d).  For the same reasons stated above, *Janus* does not preclude imposition of liability.

**B.     Defendant's Motions in Limine No. 3 and No. 5**

   **1.     Background**

Defendant seeks to "preclud[e] Plaintiffs from making any reference during opening

statement, during trial, and/or closing statement that Plaintiffs are entitled to rescission against Defendant George Vieira on Plaintiff's second cause of action." (Doc. 464 at 1-2) (emphasis omitted). Likewise, with Motion in Limine No. 4, Defendant seeks "an order precluding Plaintiffs from making any reference . . . that George Vieira is liable for negligence on the sixth cause of action." (Doc. 466 a 1-2) (emphasis omitted). Finally, Defendant seeks to "preclude[] Plaintiffs from making any reference . . . that Plaintiffs are entitled to damages against George Vieira for state securities fraud." (Doc. 466 at 1-2) (emphasis omitted).

### i. Rescission

Defendant notes Plaintiffs are "seeking rescission under the California Securities Act, California Corporations Code Section 25501, as well as the Federal securities law." (Doc. 464-1 at 3) (*see also* Plaintiffs' Third Amended Complaint, Doc. 330 at 15-23). According to Defendant,

> In this case, George Vieira did not sell or offer to sell a security. The offer was made in the offering memorandum and subscription agreement. George Vieira did not receive any consideration from the sale of the Valley Gold stock. There is absolutely no evidence that George Vieira engaged in any activities that would constitute a violation of Federal securities law or California Corporations Code Section 25401 that would give rise to rescission."

(Doc. 464-1 at 4) (emphasis omitted). In addition, Defendant contends he cannot be held liable because he did not receive the money that went to Valley Gold, and he "had nothing to do with the preparation of the offering memorandum and subscription agreements."[4] *Id*. at 3-4.

California Corporation Code § 25401[5] provides,

> It is unlawful for any person to offer or sell a security in this state . . . by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Moreover,

> Every person who directly or indirectly controls a person liable under Section 25501

---

[4] Plaintiffs posit that they may not be entitled to rescission given that Valley Gold is a "dead" corporation. However, a corporation that is defunct but not dissolved, still maintains a corporate entity with the right to sue and be sued even if it no longer can assert the attorney-client privilege. *Relink, Inc. v. United States*, 24 F.3d 42 at 44-45 (9th Cir. 1994); (Doc. 214 at 34.

[5] The Court does not address the rescission claim under federal law given that it has been dismissed.

10

> or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

Cal. Corp. Code § 25504.

As noted above, in *Nunes v. Cent. Valley Dairymen*, 2010 Cal. App. Unpub. LEXIS 8767 at *32 (Cal. App. 5th Dist. Nov. 4, 2010), the Court of Appeal determined that "the jury reasonably could infer that much of the information contained in the memorandum came from George Vieira and that he provided it to Downey Brand with the intent and expectation that they would convey it to the investor-plaintiffs. George Vieira does not claim that Downey Brand mischaracterized the information given to them; he only contends he did not make the representations to the investor-plaintiffs. George Vieira cites no authority for the proposition that his intentional and fraudulent use of an intermediary absolves him of responsibility for the misstatements."

Thus, whether Defendant will be held liable will depend upon the factual determinations made by the jury.

### ii.     State Security Fraud

Defendant notes Plaintiffs' fifth cause of action alleges a violation of California securities law.  (Doc. 468-1 at 2).  Defendant contends that Plaintiffs cannot pursue a claim against Valley Code because it is a derivative action.  *Id*. at 2-3.  In addition, Defendant contends "consequential damages are not allowed because Plaintiffs became aware of the adverse conditions of Valley Gold, and such damages were too attenuated from the fraud to be recoverable." *Id.* at 5.  Defendant asserts that this Court has *already* determined that Plaintiffs may not pursue the "milk for equity" claim. Plaintiffs explain that the fact that milk was provided rather than cash does not make the situation any less of a securities transaction.  On this basis, Plaintiff's dispute Defendants' argument that they lack standing.

At particular issue here is the fact that Plaintiff did not provide the milk to Valley Gold. They provided it to CVD and agreed that CVD would not be required to pay them for the milk.  In

exchange, Valley Gold granted them additional membership interests in Valley Gold. (Doc. 330-6) However, though this Court determined that any damage claims for non-payment for the milk had to be pursued by CVD and, therefore, Plaintiffs were barred from seeking damages for non-payment, this Court has determined also that the "milk for equity" transaction constituted a sale of securities.

> As to the equity interests acquired by Plaintiff in September 2003 pursuant to the "milk for equity" transaction, the record establishes that Plaintiff acquired additional membership interests in Valley Gold in lieu of payment by CVD for his milk, because Valley Gold was unable to fully pay CVD for the milk shipped to Valley Gold. Nonetheless, given the broad definition of a security and the absence of authority that the motive of an acquirer of a membership interest in a company is at all relevant, summary judgment on the ground that the membership interests in Valley Gold acquired by Plaintiff pursuant to the "milk for equity" transaction is DENIED based on Plaintiff's theory that CVD and Valley Gold through inaccurate financial statements and information induced the transfer of assets in the form of milk to a business venture, the success of which depended on the management efforts and business acumen of CVD and Valley Gold managements, and Plaintiff's return depended upon such efforts of others over which Plaintiff had no control.

(Doc. 301 at 44-45) "The usual measure of damages for securities fraud claims under Rule 10b-5 is out-of pocket loss; that is, the difference between the value of what the plaintiff gave up and the value of what the plaintiff received." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment*, 189 F.3d 1017, 1030 (9th Cir.1999). Thus, the Court concludes that plaintiffs have not been precluded from pursuing the state securities fraud claim but whether Plaintiffs can recover damages under this theory will depend upon factual determinations made by the jury.

### 2.     **Defendant has not made *evidentiary* objections.**

Defendant argues Plaintiffs cannot succeed on the merits of these causes of action, rather than offering argument opposing the introduction of specific evidence. As noted above, through these motion in limine, Defendant seeks not to prevent Plaintiffs from presenting specific evidence, but rather seeks a judgment in his favor on the claims for rescission, negligence, and state securities fraud. Previously, this Court explained, "Motions in limine address *evidentiary questions* and are inappropriate devices for resolving substantive issues." *NRDC v. Rodgers*, 2005 U.S. Dist. LEXIS 46293 at *10, n. 2 (E.D. Cal. June 9, 2005) (emphasis added) (citing 75 Am. Jur.2d Trial § 99 (2004)) (explaining "[m]otions in limine are not to be used as a sweeping means of testing issues of law"); *see also C & E Services*, 539 F. Supp. 2d at 323 (a motion in limine should not be used as a substitute for a motion for summary judgment). Notably, a motion in limine lacks the procedural

safeguards encompassed in a motion for summary judgment, such as notice to the non-moving party that its claims or defenses may be dismissed. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069-70 (3d Cir. 1990). Thus, as an additional basis, these motion motions 3 and 5 are **DENIED** because Defendant has not identified any *evidence* to which he objects and has attempted only to litigate the merits of these claims.

V.   **CONCLUSION AND ORDER**

In accordance with the above, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motions in Limine Nos. 2, 3, and 4 are **DENIED**;
2. Defendant's Motions in Limine Nos. 2, 3, 4 and 5 are **DENIED**.
3. Defendant's Motion in Limine No. 4 is **MOOT**.

IT IS SO ORDERED.

Dated:   **March 2, 2012**                               /s/ Jennifer L. Thurston
                                                    UNITED STATES MAGISTRATE JUDGE